# ST. LOUIS AND SAN FRANCISCO RAILWAY COM-PANY v. JAMES.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 242. Submitted October 15, 1895. — Decided March 2, 1896.

There is an indisputable legal presumption that a state corporation, when sued or suing in a Circuit Court of the United States, is composed of citizens of the State which created it, and hence such a corporation is itself deemed to come within that provision of the Constitution of the United States which confers jurisdiction upon the Federal courts in " controversies between citizens of different States."

It is competent for a railroad corporation organized under the laws of one State, when authorized so to do by the consent of the State which created it, to accept authority from another State to extend its railroad into such State and to receive a grant of powers to own and control, by lease or purchase, railroads therein, and to subject itself to such rules and regulations as may be prescribed by the second State; and such legislation on the part of two or more States is not, in the absence of inhibitory legislation by Congress, regarded as within the constitutional prohibition of agreements or compacts between States.

Such corporations may be treated by each of the States whose legislative grants they accept as domestic corporations.

The presumption that a corporation is composed of citizens of the State which created it accompanies such corporation when it does business in another State, and it may sue or be sued in the Federal courts in such other State as a citizen of the State of its original creation.

That presumption of citizenship is one of law, not to be defeated by allegation or evidence to the contrary.

The provision in the Arkansas statute of March 13, 1889, that a railroad corporation of another State which had leased or purchased a railroad in Arkansas and filed with the Secretary of State of that State, as provided by the act, a certified copy of its articles of incorporation, should become a corporation of Arkansas, does not avail to create an Arkansas corporation out of a foreign corporation complying with those provisions, in such a sense as to make it a citizen of Arkansas within the meaning of the Federal Constitution, and subject it to a suit in the Federal courts sitting in the State of Arkansas, brought by a citizen of the State of its origin.

ON December 24, 1892, Etta James, defendant in error, brought this action in the Circuit Court for the Western Dis-

trict of Arkansas against the St. Louis and San Francisco Railway Company, plaintiff in error, for negligence in maintaining a switch target at Monett, in Barry County, in the State of Missouri, so near its tracks that her husband was struck and killed by it on July 3, 1889, while employed as a fireman on one of the company's engines. Her husband resided at Monett and died intestate. The defendant in error was the widow and sole heir at law of her husband, and no administrator of his estate was appointed in Arkansas. She recovered a judgment of $5000.

Etta James, the defendant in error, resided at Monett, and was a citizen of the State of Missouri. Monett is a station in Missouri, on the railroad of the plaintiff in error, about fifty miles from the southern border of that State.

The St. Louis and San Francisco Railway Company was organized and incorporated under the laws of the State of Missouri in 1876, and soon thereafter became the owner of and has ever since owned and operated a railroad in that State extending from Monett southerly to the southern border of the State of Missouri.

Section 11 of Article XII of the constitution of the State of Arkansas, which was adopted in 1874, provides that —

" Foreign corporations may be authorized to do. business in this State under such limitations and restrictions as may be prescribed by law : *Provided*, That no such corporation shall do any business in this State, except while it maintains therein one or more known places of business and an authorized agent or agents in the same upon whom process may be served ; and, as to contracts made or business done in this State, they shall be subject to the same regulations, limitations, and liabilities as like corporations of this State, and shall exercise no other or greater powers, privileges, or franchises than may be exercised by like corporations of this State ; nor shall they have power to condemn or appropriate private property."

Section 1 of Article XVII of that constitution provides that —

" All railroads, canals, and turnpikes shall be public highways, and all railroads and canal companies shall be common

carriers. Any association or corporation organized for the purpose shall have the right to construct and operate a railroad between any points within this State, and to connect at the state line with railroads of other States. Every railroad company shall have the right with its road to intersect, connect with, or cross any other road, and shall receive and transport each other's passengers, tonnage, and cars loaded or empty, without delay or discrimination."

Section 3 of an act passed by the general assembly of the State of Arkansas, entitled "An act in relation to certain railroads," approved March 16, 1881, (Laws of Arkansas, 1881, No. 43, at p. 83,) provides —

"That every railroad corporation incorporated under the laws of this State, whose road is wholly, or in part, constructed and operated, is hereby authorized to sell, lease, or otherwise dispose of the whole or any part of its road, ways, and rights of way, with the franchises thereto belonging, and its other property, to any connecting railroad company, or to any railroad corporation now or hereafter organized under the laws of this or any other State, upon such terms and conditions as may be agreed upon by the board of directors of said corporations, and ratified by a two thirds vote of the issued capital stock thereof, and to receive the bonds or stock of the purchasing corporation in whole or in part payment of such purchase, and corporations may be formed for the purpose of purchasing or leasing the whole or any part of any railroad, and such purpose or object shall be stated in articles of association, which shall be executed and filed in the office of the Secretary of State, the same to be as near as may be in accordance with section 4918 of Gantt's Digest. All shares of stock issued in payment of such purchase shall be deemed to be full paid shares, and the number and amount of shares so to be issued shall be stated in the aforesaid articles of association, and said articles shall be otherwise altered, if necessary, so as to conform to the facts."

Section 5 of the same act provides that —

"Any railroad company incorporated by or under the laws of any other State, and having a line of railroad built, or

partly built, to or near any boundary of this State, and desiring to continue its line of railroad into or through this State, or any branch thereof, may, for the purpose of acquiring the right to build its line of railroad, lease, or purchase, the property rights, privileges, lands, tenements, immunities, and franchises of any railroad company organized under the laws of this State, which said lease or purchase shall carry with it the right of eminent domain held and acquired by said company at the time of lease or sale, and thereafter hold, use, maintain, build, construct, own, and operate the said railroad so leased or purchased as fully and to the same extent as the company organized under the laws of this State might or could have done; and the rights and powers of such company, and its corporate name, may be held and used by such foreign railroad company as will best subserve its purpose, and the building of said line of railroad; but before any such lease or sale shall be made, by any company organized under the laws of this State, two thirds in amount of the capital stock issued shall, at a meeting of the stockholders thereof — of which sixty days' notice shall be given in some newspaper published at the city of Little Rock, and in such other papers published elsewhere as the president and directors of such company may direct — assent thereto; and any railroad company organized under the laws of any State, and having a line of railroad built, or partly built, to any boundary of this State, and desiring to continue its line of road, or any branch thereof, into or through this State, is hereby authorized and empowered so to do, when it shall have acquired by lease or purchase the corporate rights, privileges, and franchises of any railroad corporation in the manner herein provided, formed under the laws of this State, and such railroad company, upon filing a certified copy of its articles of incorporation, or the special act incorporating the same, shall have, possess, and enjoy all the rights, powers, privileges, franchises, and immunities belonging to railroad corporations formed under the general laws of this State, which are not in conflict with the constitution or laws of this State; but nothing herein contained shall interfere with, or abridge the right of any railroad corporation acquired under

section 4942 of Gantt's Digest. . . . In all other matters said foreign railroad company shall be subject to all the provisions of all acts in relation to railroads, the liabilities and forfeitures thereby imposed, and may sue and be sued in the same manner as other railroad corporations, and subject to the same service of process, and shall keep an office or offices in said State as is required by section 11 of article 12 of the constitution of this State, and an agent or agents upon whom process may be served, with the like force and effect as is provided for the service of process in section two of this act."

At the time of the accident complained of the plaintiff in error owned and operated the railroad from the southern border of the State of Missouri to Fort Smith, in the State of Arkansas, in connection with its original line from Monett to the Missouri border, and these roads formed and were operated as a continuous line of railroad from Monett to Fort Smith. That portion of this continuous line of railroad which was situated in Arkansas had been built by corporations organized and incorporated under the laws of that State. In the year 1882 the St. Louis and San Francisco Railway Company purchased from these Arkansas corporations, under the act of March 16, 1881, the railroad extending from the southern border of Missouri to Fort Smith, Arkansas, and all the railways, constructed and unconstructed, and all the roads, franchises, and property which these Arkansas corporations had. These Arkansas corporations have since maintained their separate organizations as corporations of that State, but have operated no railroads. From the time of this purchase to the present time the plaintiff in error has operated this continuous line of railroad from Monett, Missouri, to Fort Smith, Arkansas, and has owned all the rolling stock and other appurtenances used upon this railroad.

An act passed by the general assembly of the State of Arkansas, entitled "An act relating to the consolidation of railroad companies and the purchasing, leasing, and operation of railroads, and to repeal sections one, two, three, four, and five of an act entitled 'An act to prohibit foreign corporations from operating railroads in this State,' approved March 22, 1887,"

approved March 13, 1889, Laws of Arkansas, 1889, act 34, at p. 43, provided as follows:

"SEC. 1. That sections one, two, three, four, and five of an act entitled 'An act to prohibit foreign corporations from operating railroads in this State,' approved March 22, 1887, be and the same are hereby repealed.

"SEC. 2. Any railroad company in this State, existing under general or special laws, may sell or lease its road, property, and franchises to any other railroad company duly organized and existing under the laws of any other State or Territory, whose line of railroad shall so connect with the leased or purchased road by bridge, ferry, or otherwise as to practically form a continuous line of railroad, and any railroad company in this State existing under general or special laws may buy or lease, or otherwise acquire, any railroad or railroads, with all the property, rights, privileges, and franchises thereto pertaining, or buy the stocks and bonds, or guarantee the bonds of any railroad company or companies incorporated or organized within or without this State whenever the roads of such companies shall form in the operation thereof a continuous line or lines: *Provided*, That before any such lease or sale is valid, it must be approved and ratified by persons holding or representing two thirds of the capital stock of each of such companies respectively, at a stockholders' meeting called for that purpose; and any railroad company existing under the general or special laws of any other State or Territory may buy or lease or otherwise acquire any railroad or railroads, the whole or part of which is in this State, with all the rights, privileges, and franchises thereto pertaining, or buy the stock and bonds, or guarantee the bonds of any railroad company incorporated or organized under the laws of this State, whenever the roads of such companies shall form in the operation thereof a continuous line or lines: *Provided*, That the road so purchased shall not be parallel or competing with the purchasing road; and any railroad company existing under the laws of any other State or Territory may extend and construct its railroad into or through this State: *Provided further*, That any agreement of any company existing under

the general or special laws of this State, or of any other State or Territory, to lease or buy a railroad and appurtenances, or to buy the stock or bonds, or guarantee the bonds of any railroad company incorporated and organized within this State, heretofore executed by the proper officers of such companies and ratified by the companies parties thereto, by the assent of persons holding two thirds of the capital stock in each of such companies, expressed at a meeting of such stockholders called for that purpose, shall be taken and held to be binding from the date of its execution: *Provided further,* That nothing in the foregoing provisions shall be held or construed as curtailing the right of State or counties through which said consolidated, leased, or purchased road or roads may be located to levy and collect taxes upon the same and the rolling stock thereof, *pro rata,* in conformity with the provisions of the laws of this State upon that subject: *Provided further,* That before any railroad corporation of any other State or Territory shall be permitted to avail itself of the benefits of this act, or any part thereof, such corporation shall file with the secretary of State of this State a certified copy of its articles of incorporation, if incorporated under a general law of such State or Territory, or a certified copy of the statute laws of such State or Territory incorporating such company, where the charter of such railroad corporation was granted by special statute of such State; and upon the filing of such articles of incorporation or such charter, with a map and profile of the proposed line, and paying the fees prescribed by law for railroad charters, such railroad company shall, to all intents and purposes, become a railroad corporation of this State, subject to all of the laws of the State now in force or hereafter enacted, the same as if formally incorporated in this State, anything in its articles of incorporation or charter to the contrary notwithstanding, and such acts on the part of such corporation shall be conclusive evidence of the intent of such corporation to create and become a domestic corporation: *And provided further,* That every railroad corporation of any other State, which has heretofore leased or purchased any railroad in this State, shall, within sixty days from the passage of this act,

file a duly certified copy of its articles of incorporation or charter with the secretary of State of this State, and shall, thereupon, become a corporation of this State, anything in its articles of incorporation or charter to the contrary notwithstanding, and in all suits or proceedings instituted against any such corporation process may be served upon the agent or agents of such corporation or corporations in this State, in the same manner that process is authorized by law to be served upon the agents of railroad corporations in this State organized and existing under the laws of this State.

"Sec. 3. Any foreign corporation which has heretofore constructed, purchased, leased, or acquired or now operates any railroad in this State, shall within sixty days after the passage of this act comply with the provisions thereof, by filing a copy of its articles of incorporation or of the special act of the legislature incorporating such company in the office of the secretary of State of this State, and for every day which any such company shall fail to comply with the provisions of this act it shall pay a penalty of one thousand dollars, which penalty may be recovered by the district attorney in a civil action instituted in the proper court in any county through which such railroad or any part thereof so owned, purchased, leased, acquired, or operated by such foreign company may be located.

"Sec. 4. This act shall take effect and be in force from and after its passage."

On May 6, 1889, the St. Louis and San Francisco Railway Company filed with the secretary of State of the State of Arkansas a duly certified copy of its articles of incorporation under the laws of Missouri, as required by said act of March 13, 1889, and has never been otherwise incorporated or organized under the laws of the State of Arkansas.

The plaintiff in error properly and seasonably raised the objection in the Circuit Court that that court had no jurisdiction of this action on the ground that the plaintiff in error was not a citizen of the State of Arkansas, but was a citizen of the State of Missouri, of which State the defendant in error was also a resident and citizen; but the plaintiff in

error waived its personal privilege of being sued in the district of which it was an inhabitant. The question raised by that objection was, by proper exception to the ruling below and assignment of error, presented to the Circuit Court of Appeals for determination.

And the said United States Circuit Court of Appeals, to the end that it might properly decide this and other questions arising in this case which are duly presented by exceptions and assignments of error properly taken and filed, the said court, desired the instruction of the Supreme Court of the United States upon the following questions:

1st. In view of the provisions of the act of the general assembly of Arkansas, approved March 13, 1889, did the St. Louis and San Francisco Railway Company, by filing a certified copy of its articles of incorporation under the laws of Missouri with the secretary of State of Arkansas, and continuing to operate its railroad through that State, become a corporation and citizen of the State of Arkansas?

2d. In view of the provisions of the act of the general assembly of Arkansas, approved March 13, 1889, did the St. Louis and San Francisco Railway Company, by filing a certified copy of its articles of incorporation under the laws of Missouri with the secretary of State of Arkansas, and continuing to operate its railroad through that State, become a citizen of the State of Arkansas, so as to give the Circuit Court of the United States for the Western District of Arkansas jurisdiction of this action, in which the defendant in error was and is a citizen of the State of Missouri?

3d. In view of the provisions of the act of the general assembly of Arkansas, approved March 13, 1889, did the St. Louis and San Francisco Railway Company, by filing a certified copy of its articles of incorporation under the laws of Missouri with the secretary of State of Arkansas, and continuing to operate its railroad through that State, become a citizen of the State of Arkansas, so as to give the Circuit Court of the United States for the Western District of Arkansas jurisdiction of this action, in which defendant in error was and is a resident and citizen of the State of Missouri, and the

cause of action accrued in the State of Missouri, and arose from an accident that resulted from the operation of the railroad of the company in that State?

4th. In view of the facts hereinbefore set forth, did the Circuit Court of the United States for the Western District of Arkansas have jurisdiction of this action?

*Mr. George R. Peck, Mr. A. T. Britton, Mr. E. D. Kenna,* and *Mr. A. B. Browne,* for plaintiff in error.

*Mr. Frank W. Hackett, Mr. J. H. Clendening, Mr. H. C. Mechem,* and *Mr. F. A. Youmans* for defendant in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

Etta James, as a citizen of the State of Missouri, and having a cause of action against the St. Louis and San Francisco Railway Company, a corporation of the State of Missouri, could, of course, sue the latter in the courts of that State, but equally, of course, could not sue such state corporation in the Circuit Court of the United States for the District of Missouri. Can she, as such citizen of the State of Missouri, lawfully assert her cause of action in the Circuit Court of the United States for the District of Arkansas against the St. Louis and San Francisco Railway Company by showing that the latter had availed itself of the rights and privileges conferred by the State of Arkansas on railroad corporations of other States coming within her borders and complying with the terms and conditions of her statutes?

Before addressing ourselves directly to this question, it must be conceded that the plaintiff's cause of action, though arising in Missouri, is transitory in its nature, and that the St. Louis and San Francisco Railway Company, though denying the plaintiff's right to sue it in the Circuit Court of Arkansas, waives its statutory privilege of being sued only in the district in which it has its habitat.

It must be regarded, to begin with, as finally settled, by repeated decisions of this court, that, for the purpose of juris-

diction in the Federal courts, a state corporation is deemed to be indisputably composed of citizens of such State. It is equally true that, without objection so far from the Federal authority, whether legislative or judicial, it has become customary for a State, adjacent to the State creating a railroad corporation, to legislatively grant authority to such foreign corporation to enter its territory with its road — to make running arrangements with its own railroads — to buy or lease them or to consolidate with the companies owning them. Sometimes, as in the present case, such foreign corporation is declared, upon its acceptance of prescribed terms and conditions, to become a domestic corporation of such adjacent State, and to be endowed with all the rights and privileges enjoyed by similar corporations created by such State.

We have already said that the rule that state corporations are undisputably composed of citizens of the States creating them is finally settled. But, in view of the question now before us, it may be well to briefly review some of the cases.

In the case of *Bank of the United States* v. *Deveaux*, 5 Cranch, 61, 87, 88, where an action had been brought against citizens of the State of Georgia in the Circuit Court of the United States for the District of Georgia, by a petition of "the president, directors, and company of the Bank of the United States," wherein it was alleged that the petitioners were citizens of the State of Pennsylvania, it was held that a corporation aggregate, composed of citizens of one State, may sue a citizen of another State in the Circuit Court of the United States, and Chief Justice Marshall, in giving the opinion of the court, said: "Substantially and essentially, the parties in such a case, where the members of the corporation are aliens or citizens of a different State from the opposite party, come within the spirit and terms of the jurisdiction conferred by the Constitution on the national tribunals."

Before leaving this case it should be noted that the United States Bank was not a corporation of the State of Pennsylvania, but of the United States. The decision, therefore, was to the effect that where it appeared that a corporation plaintiff, regardless of its origin, was composed of aliens or of

citizens of a different State from the defendant, the plaintiff, through suing in its corporate name, could make the averment that the individuals who composed the corporation were such aliens or citizens of a different State, and such averment, if not traversed, would sustain the jurisdiction. The principle of the case makes the individual corporators the real parties to the suit.

In *Louisville, Cincinnati &c. Railroad* v. *Letson,* 2 How. 497, 555, an action was brought, in the Circuit Court of the United States for the District of South Carolina, by a citizen of the State of New York against a corporation whose members were alleged to be citizens of South Carolina. A plea to the jurisdiction was set up that there were members of the defendant company who were not citizens of the State of South Carolina, but of another State than New York or South Carolina. In the opinion in this case, *Bank of the United States* v. *Deveaux* was said to have gone too far, and that consequences and inferences had been argumentatively drawn from it which ought not to be followed, and it was said that "a corporation created by a State to perform its functions under the authority of that State and only suable there, though it may have members out of the State, seems to us to be a person, though an artificial one, inhabiting and belonging to that State, and, therefore, entitled, for the purpose of suing and being sued, to be deemed a citizen of that State," and accordingly the judgment of the Circuit Court, overruling the plea to its jurisdiction, was sustained.

*Marshall* v. *Baltimore & Ohio Railroad,* 16 How. 314, 329, was a case tried in the Circuit Court of the United States for the District of Maryland, wherein the plaintiff alleged that he was a citizen of the State of Virginia, and that the Baltimore and Ohio Railroad Company, the defendant, was a body corporate by an act of the general assembly of Maryland, and it was suggested, when the case came into this court, that such an averment was insufficient to show jurisdiction in the courts of the United States over the suits, and it was denied that the decision in *Louisville Railroad Company* v. *Letson,* 2 How. 497, sanctioned it, or, if some of the doctrines there

advanced seemed to do so, it was said that they were extra-judicial, and, therefore, not authoritative. Several judges dissented, but the court, speaking through Mr. Justice Grier, held that " if the declaration set forth facts from which the citizenship of the parties may be presumed or legally inferred, it is sufficient. The presumption arising from the habitat of a corporation in the place of its creation being conclusive as to the residence or citizenship of those who use the corporate name and exercise the faculties conferred by it, the allegation that ' the defendants are a body corporate by the act of the general assembly of Maryland,' is a sufficient averment that the real defendants are citizens of that State."

In *Covington Drawbridge Co.* v. *Shepherd,* 20 How. 227, 233, Chief Justice Taney, speaking for the court, said : " The question as to the jurisdiction of the courts of the United States in cases where a corporation is a party, was argued and considered in this court, for the first time, in the cases of the *Hope Insurance Company* v. *Boardman,* and of the *Bank of the United States* v. *Deveaux,* 5 Cranch, 57 and 61. These two cases were argued at the same term, and were, as appears by the report, decided at the same time. And in the last-mentioned case the court held that in a suit by or against a corporation, in its corporate name, this court might look beyond the mere legal being which the charter created, and regard it as a suit brought by or against the individual persons who composed the corporation; and an averment that they were citizens of a particular State (if such was the fact) would be sufficient to give jurisdiction to a court of the United States, although the suit was in the corporate name, and the individual corporators were not named in the suit or the averment.

" But in the case of the *Louisville Railroad Company* v. *Letson* the court overruled as much of this opinion as authorized a corporation to plead in abatement that one or more of the corporators, plaintiff or defendants, were citizens of a different State from the one described, and held that the members of the corporate body must be presumed to be citizens of the State in which the corporation was domiciled, and that both parties were estopped from denying it. And that inasmuch

as the corporators were not parties to the suit in their individual characters, but merely as members and component parts of the body or legal entity which the charter created, the members who composed it ought to be presumed, so far as its contracts and liabilities are concerned, to reside where the domicil of the body was fixed by law, and where alone they could act as one person; and to the same extent, and for the same purposes, be also regarded as citizens of the State from which this legal being derived its existence and its faculties and powers."

The previous cases were reviewed in *Ohio & Mississippi Railroad* v. *Wheeler*, 1 Black, 286, 297. That was the case of an action brought in the Circuit Court of the United States for the District of Indiana against Wheeler, a citizen of that State, to recover the amount due on his subscription to stock of the Ohio and Mississippi Railroad Company. The declaration described the plaintiffs as " the president and directors of the Ohio and Mississippi Railroad Company, a corporation created by the laws of the States of Indiana and Ohio, and having its principal place of business in Cincinnati, in the State of Ohio, a citizen of the State of Ohio." The defendant pleaded to the jurisdiction by alleging that the plaintiff company, although a corporation of the State of Ohio in the first instance, had been incorporated by an act of assembly of the State of Indiana, and thus had become a body corporate of the same State whereof he was a citizen.

The question thus raised was on a certificate of a division of opinion between the judges of the Circuit Court, brought to this court, and was answered as follows : " This suit in the corporate name is, in contemplation of, law, the suit of the individual persons who compose it, and must, therefore, be regarded and treated as a suit in which citizens of Ohio and Indiana are joined as plaintiffs in an action against a citizen of the last mentioned State. Such an action cannot be maintained in a court of the United States, where jurisdiction of the case depends altogether on the citizenship of the parties. And, in such a suit, it can make no difference whether the plaintiffs sue in their own proper names, or by the corporate name and

style by which they are described. The averments in the declaration would seem to imply that the plaintiffs claim to have been created a corporate body, and to have been endued with the capacities and faculties it possesses by the coöperating legislation of the two States, and to be one and the same legal being in both States. If this were the case it would not affect the question of jurisdiction in this suit. But such a corporation can have no legal existence upon the principles of the common law or under the decision of this court in the case of the *Bank of Augusta* v. *Earle.* It is true that a corporation by the name and style of the plaintiffs appears to have been chartered by the States of Indiana and Ohio, clothed with the same capacities and powers, and intended to accomplish the same objects, and it is spoken of in the laws of those States as one corporate body, exercising the same powers and fulfilling the same duties in both States. Yet it has no legal existence in either State, except by the law of the State. And neither State could confer on it a corporate existence in the other, nor add to or diminish the powers to be there exercised. It may, indeed, be composed of and represent, under the corporate name, the same natural persons. But the legal entity or person, which exists by force of law, can have no existence beyond the limits of the State or sovereignty which brings it into life and endues it with its faculties and powers. The president and directors of the Ohio and Mississippi Railroad Company are, therefore, a distinct and separate corporate body in Indiana from the corporate body of the same name in Ohio, and they cannot be joined in a suit as one and the same plaintiff, nor maintain a suit in that character against a citizen of Ohio or Indiana in a Circuit Court of the United States. . . . And we shall certify to the Circuit Court that it has no jurisdiction of the case on the facts presented by the pleadings."

*Memphis & Charleston Railroad* v. *Alabama,* 107 U. S. 581, 585, was where an action had been brought by the State of Alabama, for the use of a county of that State, in a court of that State, against a railroad corporation whose road passed through that State and county, to recover the amount of a county tax

assessed upon its property; and the cause was removed into the Circuit Court of the United States for the Northern District of Alabama; and upon motion the cause was remanded to the state court upon the ground that the defendant, although incorporated in Tennessee also, was a corporation of the State of Alabama. On error the judgment of the court below was affirmed, and this court, per Mr. Justice Gray, said: "The defendant, being a corporation of the State of Alabama, has no existence in this State as a legal entity or person, except under and by force of its incorporation by this State; and although also incorporated in the State of Tennessee, must, as to all its doings within the State of Alabama, be considered a citizen of the State of Alabama, which cannot sue or be sued by another citizen of Alabama in the courts of the United States."

In this case, *Ohio & Mississippi Railroad* v. *Wheeler*, 1 Black, 286, and *Railway Company* v. *Whitton*, 13 Wall. 270, were cited. The former has already been noticed, and of the latter it may be said, by way of distinguishing it from the present case, that while it was held that a citizen of Illinois might sue the railroad company in the Circuit Court of Wisconsin, although the company had been likewise incorporated in Illinois, yet the cause of action arose in Wisconsin — nor does it appear in the report of that case what was the character of the legislation by which the Wisconsin company was created, nor was the question now before us there considered. It is also observable that in the latter case *Ohio & Mississippi Railroad* v. *Wheeler* was cited with approval.

One phase of the subject was before the court in the case of the *Pennsylvania Co.* v. *St. Louis &c. Railroad*, 118 U. S. 290, 295. A suit had been brought in the Circuit Court of the United States for the District of Indiana, by the St. Louis, Alton, and Terre Haute Railroad Company, alleging that it was a corporation organized under the laws of the State of Illinois, and a citizen of that State, against the Indianapolis and St. Louis company, a corporation organized under the laws of the State of Indiana, and a citizen of that State, and against other corporations mentioned in the bill as citizens of Indiana,

or of other States than Illinois. An objection to the jurisdiction was made on the ground that the St. Louis, Alton, and Terre Haute Railroad Company was organized under laws of both Illinois and Indiana, and was therefore a citizen of the latter State. In treating this question this court said, by Mr. Justice Miller : " It does not seem to admit of question that a corporation of one State, owning property and doing business in another State by permission of the latter, does not become a citizen of this State also. And so a corporation of Illinois, authorized by its laws to build a railroad across the State from the Mississippi River to its eastern boundary, may by permission of the State of Indiana extend its road a few miles within the limits of the latter, or, indeed, through the entire State, . . . without thereby becoming a corporation or a citizen of the State of Indiana. Nor does it seem to us that an act of the legislature conferring upon this corporation of Illinois, by its Illinois corporate name, such powers to enable it to use and control that part of the road within the State of Indiana as have been conferred on it by the State which created it, constitutes it a corporation of the State of Indiana. It may not be easy in all such cases to distinguish between the purpose to create a new corporation which shall owe its existence to the law or statute under consideration, and the intent to enable the corporation already in existence under laws of another State to exercise its functions in the State where it is so received. The latter class of laws are common in authorizing insurance companies, banking companies and others to do business in other States than those which have chartered them. To make such a company a corporation of another State, the language must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the legislature, and such allegiance as a state corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this, and does not make it a citizen of the State conferring such powers."

So in *Nashua Railroad* v. *Lowell Railroad*, 136 U. S. 356, it was held that railroad corporations, created by two or more

States, though joined in their interests, in the operation of their roads, in the issue of their stock, and in the division of their profits, so as practically to be a single corporation, do not lose their identity; but each has its existence and its standing in the courts of the country only by virtue of the legislation of the State by which it was created, and the union of name, of officers, of business and property does not change their distinctive character as separate corporations.

To fully reconcile all the expressions used in these cases would be no easy task, but we think the following propositions may be fairly deduced from them: There is an indisputable legal presumption that a state corporation, when sued or suing in a Circuit Court of the United States, is composed of citizens of the State which created it, and hence such a corporation is itself deemed to come within that provision of the Constitution of the United States which confers jurisdiction upon the Federal courts in "controversies between citizens of different States."

It is competent for a railroad corporation organized under the laws of one State, when authorized so to do by the consent of the State which created it, to accept authority from another State to extend its railroad into such State and to receive a grant of powers to own and control, by lease or purchase, railroads therein, and to subject itself to such rules and regulations as may be prescribed by the second State. Such legislation on the part of two or more States is not, in the absence of inhibitory legislation by Congress, regarded as within the constitutional prohibition of agreements or compacts between States.

Such corporations may be treated by each of the States whose legislative grants they accept as domestic corporations.

The presumption that a corporation is composed of citizens of the State which created it accompanies such corporation when it does business in another State, and it may sue or be sued in the Federal courts in such other State as a citizen of the State of its original creation.

We are now asked to extend the doctrine of indisputable citizenship, so that if a corporation of one State, indisputably

taken, for the purpose of Federal jurisdiction, to be composed of citizens of such State, is authorized by the law of another State to do business therein, and to be endowed, for local purposes, with all the powers and privileges of a domestic corporation, such adopted corporation shall be deemed to be composed of citizens of the second State, in such a sense as to confer jurisdiction on the Federal courts at the suit of a citizen of the State of its original creation.

We are unwilling to sanction such an extension of a doctrine which, as heretofore established, went to the very verge of judicial power. That doctrine began, as we have seen, in the assumption that State corporations were composed of citizens of the State which created them; but such assumption was one of fact, and was the subject of allegation and traverse, and thus the jurisdiction of the Federal courts might be defeated. Then, after a long contest in this court, it was settled that the presumption of citizenship is one of law, not to be defeated by allegation or evidence to the contrary. There we are content to leave it.

It should be observed that, in the present case, the corporation defendant was not incorporated as such by the State of Arkansas. The legislation of that State was professedly dealing with the railroad corporation of other States. The constitution of Arkansas provides that "foreign corporations may be authorized to do business in this State under such limitations and restrictions as may be prescribed by law," but "they shall not have power to condemn or appropriate private property."

Section 5 of the act of March 16, 1881, as shown in the preliminary statement, provides that "any railroad company incorporated by or under the laws of any other State, and having a line of railroad built, or partly built, to or near any boundary of this State, and desiring to continue its line of railroad into or through this State, or any branch thereof, may, for the purpose of acquiring the right to build its line of railroad, lease or purchase the property, rights, privileges, lands, tenements, immunities and franchises of any railroad company organized under the laws of this State, which said lease

or purchase shall carry with it the right of eminent domain held and acquired by said company at the time of lease or sale, and thereafter hold, use, maintain, build, construct, own and operate the said railroad so leased or purchased as fully and to the same extent as the company organized under the laws of this State might or could have done; and the rights and powers of such company, and its corporate name, may be held and used by such foreign railroad company as will best subserve its purpose and the building of said line of railroad. . . . . In all other matters said foreign railroad company shall be subject to all the provisions of all acts in relation to railroads, the liabilities and forfeitures thereby imposed, and may sue and be sued in the same manner as other railroad corporations, and subject to the same service of process, and shall keep an office or offices in said State as required by the constitution of this State."

It was under the provisions of this section that the St. Louis and San Francisco Railway Company, in 1882, purchased from corporations of Arkansas, the railroad already built by them extending from the southern boundary of Missouri to Fort Smith in Arkansas. These Arkansas corporations have since maintained their separate organizations as corporations of that State, but do not operate railroads. It is, therefore, obvious that such purchase by the Missouri corporation of the railroad and franchises of the Arkansas companies did not convert it into an Arkansas corporation. The terms of the statute show that it merely granted rights and powers to an existing foreign corporation, which was to continue to exist as such, subject only to certain conditions — among others that of keeping an office in the State, so as to be subject to process of the Arkansas courts.

It is true that by the subsequent act of 1889, by the proviso to the second section, it was provided that every railroad corporation of any other State, which had theretofore leased or purchased any railroad in Arkansas, should, within sixty days from the passage of the act, file a certified copy of its articles of incorporation or charter with the secretary of state, and shall thereupon become a corporation of Arkansas, anything

in its articles of incorporation or charter to the contrary notwithstanding; and it appears that the defendant company did accordingly file a copy of its articles of incorporation with the secretary of the state. But whatever may be the effect of such legislation, in the way of subjecting foreign railroad companies to control and regulation by the local laws of Arkansas, we cannot concede that it availed to create an Arkansas corporation out of a foreign corporation in such a sense as to make it a citizen of Arkansas within the meaning of the Federal Constitution so as to subject it as such to a suit by a citizen of the State of its origin. In order to bring such an artificial body as a corporation within the spirit and letter of that Constitution, as construed by the decisions of this court, it would be necessary to create it out of natural persons, whose citizenship of the State creating it could be imputed to the corporation itself. But it is not pretended in the present case that natural persons, resident in and citizens of Arkansas, were by the legislation in question created a corporation, and that therefore the citizenship of the individual corporators is imputable to the corporation.

It is further contended, on behalf of the defendant in error, the plaintiff below, that, as the plaintiff described herself as a citizen of Missouri, and the defendant company as a citizen of Arkansas, and as the cause of action, though arising in Missouri, was transitory in its nature, jurisdiction was thus formally conferred upon the Circuit Court of the United States for the District of Arkansas, and that the only question left for inquiry was whether the defendant company, alleged to be a citizen of Arkansas, was legally responsible for the conduct of the Missouri company of the same name, and such responsibility is supposed to be found in the fact that the railroad running through both States was under the common management of both companies.

But even if it be admitted that a common management of a railroad running through two States, and participation in its earnings and losses, by two companies, might make both responsible, jointly and severally, for a tortious cause of action, and that such cause of action might be maintained

in the courts of either State, the question of the jurisdiction
of the Federal court still remains. The defendant was not
content to leave that question to be decided by the plaintiff's
allegations, but pleaded that it was in law a corporation of
the State of Missouri, and that, therefore, an action could not
be maintained against it, in the Federal court, by a citizen of
that State. In other words, the defendant company claimed
that, while it had voluntarily subjected itself to the laws of
Arkansas, as interpreted and enforced by the courts of that
State, it still remained a corporation of the State of Missouri,
disabled from suing or being sued by a citizen of that State in
a Federal court, and that such disability was not and could
not be removed by state legislation.

*The result of these views is that we answer the second ques-
tion put to us by the Circuit Court of Appeals in the nega-
tive, and this renders it unnecessary to answer the other
questions.*

MR. JUSTICE HARLAN dissenting.

I am of opinion that this action is one of which the Cir-
cuit Court of the United States for the Western District of
Arkansas could properly take cognizance, and that the fourth
question propounded by the Circuit Court of Appeals should
be answered in the affirmative; in which case it will become
unnecessary to answer the other questions.

The statement of the case, to which the certified questions
are appended, does not distinctly show whether the railway
company is described, in the complaint or declaration, as a
corporation of Missouri or as a corporation of Arkansas. But
I take it that the able judges who joined in the certificate did
not intend to ask this court whether the court below had juris-
diction of an action brought by a citizen of Missouri against
a corporation of *that* State. It must be assumed that the
defendant company, the St. Louis and San Francisco Railway
Company, is sued as a corporation of Arkansas.

Is there an Arkansas corporation by the name of the St.
Louis and San Francisco Railway Company? The Missouri

corporation of the same name complied with the Arkansas statute of March 13, 1889, by filing in the office of the secretary of State of Arkansas a certified copy of its articles of incorporation, and, therefore, if effect be given to the statute as a valid enactment it became, also, a corporation of Arkansas. This is made clear by the last proviso of section two of the Arkansas statute declaring: "And provided further, that every railroad corporation of any other State which has heretofore leased or purchased any railroad in this State shall, within sixty days from the passage of this act, file a duly certified copy of its articles of incorporation or charter with the secretary of State of this State, and shall thereupon become *a corporation of this State, anything in its articles of incorporation or charter to the contrary notwithstanding,* and in all suits or proceedings instituted against any such corporation, process may be served upon the agent or agents of such corporation or corporations in this State in the same manner that process is authorized by law to be served upon the agents of railroad corporations in this State, organized and existing under the laws of this State."

We have, then, two distinct corporations, one being the St. Louis and San Francisco Railway Company, a Missouri corporation, the other, the St. Louis and San Francisco Railway Company, an Arkansas corporation. If a citizen of Tennessee, being a passenger on the St. Louis and San Francisco Railway, as operated in Arkansas, be injured by the negligent conduct of those who operated the road in Arkansas, it is clear, if the amount in dispute be sufficient, that he could sue the St. Louis and San Francisco Railway Company, *as a corporation organized under the laws of Arkansas,* in the Federal Circuit Court sitting in that State. The right to maintain such suit shows that there is an Arkansas corporation distinct as to its corporate existence from the Missouri corporation of the same name, and having, for purposes of suit, a citizenship in Arkansas.

In the particular just mentioned, the present case is not substantially different from that of *Ohio & Mississippi Railroad* v., *Wheeler,* 1 Black, 286, 297, 298. The report of that case

shows that a corporation, by the name of the Ohio and Mississippi Railroad Company, was chartered by the States of Indiana and Ohio. Chief Justice Taney said: "The president and directors of the Ohio and Mississippi Railroad Company is, therefore, a distinct and separate corporate body in Indiana from the corporate body of the same name in Ohio, and they cannot be *joined* in a suit as one and the same plaintiff, nor maintain a suit *in that character* against a citizen of Ohio or Indiana in a Circuit court of the United States." If the present suit had been brought against the St. Louis and San Francisco Railway Company, as incorporated both in Missouri and Arkansas, the complaint, under the decision in the *Wheeler case*, would have disclosed, upon its face, a want of jurisdiction; for, one of the defendant corporations, and the plaintiff, in such a case, would be citizens of the same State. In *Railroad Co.* v. *Harris*, 12 Wall. 65, 82, the court said: "Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own, *quo ad hoc* any property within its territorial jurisdiction. That this may be done was distinctly held in *Ohio & Mississippi Railroad* v. *Wheeler*, 1 Black, 297."

The same point arose and was decided in *Railway Company* v. *Whitton*, 13 Wall. 270. It appears from the report of that case, but more distinctly from the original record, which I have examined, that the Chicago and Northwestern Railway Company was a corporation of Wisconsin, and also of Illinois and Michigan, respectively. The plaintiff sued, in a court of Wisconsin, as a citizen of Illinois. The defendant was the Chicago and Northwestern Railway Company, incorporated in Wisconsin. The question was, whether that case was removable to the Federal court, sitting in Wisconsin, upon the ground of diverse citizenship. That question was decided in the affirmative. It was objected that the Chicago and Northwestern Railway Company, although a corporation of Wisconsin, was also a corporation under the laws of Illinois, of which State the plaintiff was a citizen. This court, speaking by Mr. Justice Field, said: "The answer to this position is obvious. In Wisconsin, the laws of Illinois have no opera-

tion.   The defendant is a corporation, and as such a citizen of Wisconsin by the laws of that State.   It is not *there* a corporation or a citizen of any other State.   Being there sued it can only be brought into court as a citizen of that State, whatever its status" or citizenship may be elsewhere.   Nor is there anything against this view, but, on the contrary, much to support it, in the case of the *Ohio & Mississippi Railroad* v. *Wheeler,* 1 Black, 286."   Referring to the decision of the *Wheeler case,* the court held that the Chicago and Northwestern Railway Company must be regarded, for all purposes of jurisdiction in the Federal courts, as a distinct corporation *in each of the States* of Wisconsin, Illinois, and Michigan.

So, in *Nashua Railroad* v. *Lowell Railroad,* 136 U. S. 356, 373, it was held that a corporation created by the laws of Massachusetts, bearing the same name, composed of the same stockholders, and designed to accomplish the same purposes as a New Hampshire corporation, was not the same corporation with the one in New Hampshire.   The court said: " Identity of name, powers and purposes does not create an identity of origin or existence, any more than other statutes, alike in language, passed by different legislative bodies, can properly be said to owe their existence to both.   To each statute and to the corporation created by it there can be but one legislative paternity."

To the same effect are *Muller* v. *Dows,* 94 U. S. 444, 447; *Railroad Co.* v. *Vance,* 96 U. S. 450, 453, 457; *Clark* v. *Barnard,* 108 U. S. 436, 448, 452; *Farnum* v. *Blackstone Canal Co.,* 1 Sumner, 46; *St. Louis, Alton & Terre Haute Railroad* v. *Indianapolis & St. Louis Railroad,* 9 Bissell, 144.

I submit, with confidence, that if the defendant company is a corporation of Arkansas, and wholly distinct, as a corporate body, from the corporation in Missouri of the same name, the jurisdiction of the court below to determine the controversy between the present parties is not defeated by the fact that the Missouri corporation and the plaintiff are both citizens of Missouri.   If this view be sound, it results that the plaintiff, a citizen of Missouri, can invoke the jurisdiction of the United States Circuit Court, sitting in Arkansas, to determine a con-

troversy between her and the St. Louis and San Francisco Railway Company, a corporation of Arkansas.

We are here met with the suggestion that the cause of action arose in Missouri, and that the injuries, of which the plaintiff complains, were committed in Missouri by the Missouri corporation bearing the same name as that of the present defendant. But the question still remains whether, in view of the relations of the Arkansas corporation to the St. Louis and San Francisco Railway in Missouri, the Arkansas corporation could be separately sued in the Federal court, sitting in Arkansas. The *jurisdiction* of the court below existed by reason of the diverse citizenship of the parties. If, upon the facts disclosed at the trial, the court was of opinion that the Arkansas corporation was not liable to the plaintiff upon a cause of action arising in Missouri, it would not dismiss the action for want of jurisdiction, but would direct the jury to return a verdict for the defendant.

Was not the Arkansas corporation liable to the plaintiff, albeit the cause of action arose in Missouri? It appears from the record that the road from Monett, Missouri, to Fort Smith, Arkansas, is and for many years has been operated as one continuous line. The entire line is under the joint management of the Missouri and Arkansas corporations. In other words, the St. Louis and San Francisco Railway Company, as a Missouri corporation, manages the property situated in Missouri, and, as an Arkansas corporation, manages the property situated in Arkansas.

Are not both corporations liable to the plaintiff under the authority of *Pennsylvania Railroad* v. *Jones* and *Pennsylvania Railroad* v. *Stewart*, 155 U. S. 333, 345? The facts in that case were these: The plaintiffs were personally injured by a railroad collision between a train of the Virginia Midland Railway Company and a train of the Alexandria and Fredericksburg Railway Company. The injury occurred near Washington but in Virginia, on the tracks of the Alexandria and Washington Railroad Company. The suit was brought against the latter company, which was then in the hands of a receiver, as well as against several other companies. One

of the questions in the case was whether any company was liable except the one whose negligence was the immediate cause of the injury.   This court, speaking by Mr. Justice Shiras, said : " Our views respecting the exceptions urged on behalf of the other plaintiffs in error are briefly expressed as follows :  There was evidence from which the jury might properly infer that the railroad between the cities of Alexandria and Washington was managed and controlled for the common use of the Baltimore and Potomac Railroad Company, (owning that portion of the route that lies between Washington and the south end of the Long Bridge,) the Alexandria and Washington Railroad Company, (owning that portion between the south end of the Long Bridge and St. Asaph's Junction,) and the Alexandria and Fredericksburg Railway Company (owning the line between St. Asaph's Junction and Alexandria); *that the gross earnings of these companies, derived from this line between Alexandria and Washington,* including what the Virginia Midland Railway Company paid for the privilege of running its trains over these tracks and what was received for transportation of mails, *went into the hands of a common treasurer,* and were, by him, after paying operating expenses, *divided among the three companies,* according to some rule not very definitely shown, but apparently in proportion to the miles of track of each road ; that the operating and accounting officers of the three companies were the same ; that the freight train in question was, at the time of the collision, on that portion of the road which belonged to the Alexandria and Washington Company ; that the engineer and fireman were employés of the Baltimore and Potomac Railroad Company ; that the engine was that of the Alexandria and Fredericksburg Railway Company; that the conductor and brakemen were employés of that company; and that the passenger train was in charge of a pilot employed and paid by the three companies, in pursuance of an arrangement to that effect."   These facts, the court said, if proved, would warrant a finding of joint liability of the three companies to the plaintiff.   Consequently, either company can be sued.   I am unable to perceive why, under the principles of

that case, the Arkansas corporation is not liable to the plaintiff for personal injuries received through the negligence of the Missouri corporation. The two corporations have a common management and a common treasury, and they unite in operating the lines of road, situated in Missouri and Arkansas, as one continuous road.

At first blush, it may seem strange that the plaintiff did not sue the Missouri corporation in one of the courts of Missouri. But that cannot affect the jurisdiction of the court below, if the defendant is an Arkansas corporation. And her right to a judgment cannot be denied, if the Arkansas corporation is liable for injuries caused, in Missouri, by the negligence of the Missouri corporation. It may be that the line in Missouri is covered by mortgages for very large amounts, so that a judgment against the Missouri corporation would be of no real value. That perhaps is the reason why the plaintiff brought suit against the Arkansas corporation. But, as already said, this view is not at all material on the present hearing.

To sum up: There is an Arkansas corporation by the name of the St. Louis and San Francisco Railway Company; that corporation, being a citizen of Arkansas, can be sued in the court below by a citizen of Missouri; the court below has, consequently, jurisdiction to determine any controversy between those parties, citizens of different States (the amount in dispute being sufficient) which has been raised by the plaintiff's complaint; the Arkansas corporation, by reason of its relation to the Missouri corporation in the operation, as one continuous road, of the lines connecting Monett, Missouri, with Fort Smith, Arkansas, is liable for the acts and defaults of the Missouri corporation in the management of that part of the continuous road which lies in Missouri; and, even if the Arkansas corporation is held, under the evidence, not to be liable, the case should not be dismissed for want of jurisdiction in the court below, but the jury should be instructed to find for the defendant.

For these reasons I am unable to concur in the opinion of the majority.