# MÁXIMO MARRERO SANTANA

*v.*

# MARQUEZ & COMPANY.

San Juan, Law, No. 403.

1. The diversity of citizenship necessary to give the court jurisdiction exists in a suit by a citizen of Porto Rico against a partnership organized under the laws of Porto Rico, whose members are citizens of Spain.

2. Such a partnership is neither a corporation nor such a joint stock association that the jurisdiction of this court can be predicated upon its supposed citizenship.

3. Such a partnership has no citizenship for jurisdictional purposes, whether general or "en comandita."

4. Articles 116 and 122 of the Code of Commerce, § 35 of the Civil Code, and the Bruguera Case, vol. 25, p. 457 (Supreme Court of Spain), Jurisprudencia Civil, construed.

Order filed December 6, 1906.

*Frank Antonsanti, Esq.,* attorney for plaintiff.

*F. H. Dexter, Esq., Felipe Cuchi, Esq., Cay. Coll y Cuchi, Esq.,* attorneys for defendant.

RODEY, Judge, delivered the following opinion:

This is a suit in ejectment brought by the plaintiff to eject the defendants from 73½ cuerdas of land situated in the munici-

pal jurisdiction of Utuado in this island of Porto Rico, and to recover damages for the wrongful detention thereof. The defendants at the proper time filed what amounts to a general denial (or a plea of not guilty in ejectment), but by leave thereafter, without disturbing the latter pleading, moved to dismiss for want of jurisdiction, on the ground that there is no such diverse citizenship shown by the face of the declaration or existing in fact, as would authorize this court to retain the cause.

The declaration alleges that: "The plaintiff is a citizen and resident of Porto Rico and that the defendant firm of Marquez & Company is one doing business in the town of Utuado, island of Porto Rico, and that the said Antonio Marquez Borras is a special partner and the said Bernardo Marquez Rullan is the managing partner of said firm, and all of which defendants are subjects of the King of Spain."

The motion to dismiss alleges that the defendant concern was organized as a mercantile society or company on the 4th day of August, 1896, in the city of San Juan, in accordance with the laws of Spain then in force on this island, by reason of which it became and was an artificial society or company, having a separate judicial entity, with power to sue and be sued as such, independently of its members, and that the title to the property sought to be recovered in this action stands in its name as a firm, and not in the names of the individual partners, in the land registry office of the district where it is situated. That, by its articles of association, a certified copy of which is filed with the motion, its life was first limited to six years, and that in March, 1904, several years after the American occupation, with some slight changes, it was continued in existence for an additional ten years by a proper supplemental public instrument executed before a notary.

Santana v. Marquez & Co.

The defendant concern alleges that by virtue of this extension and modification of its existence, it became a citizen of Porto Rico, and that therefore, under the law and under the ruling of this court in the case of Vallecillo y Mandry v. Bertran, ante, p. 46, both parties to the controversy being Porto Ricans, the court is without jurisdiction in the premises.

The motion raises the very important question as to whether or not limited and other partnerships of the different kinds that are authorized by law in Porto Rico, being, as it is said, by law "judicial persons" or legal entities, are citizens in the same sense that the Supreme Court of the United States has held full-fledged corporations in the several states of the United States to be for purposes of Federal jurisdiction in "controversies between citizens of different states." See St. Louis & S. F. R. Co. v. James, 161 U. S. 545, 40 L. ed. 802, 16 Sup. Ct. Rep. 621; Carter, Jurisdiction of Fed. Courts, pp. 36–54.

This modern holding by the Supreme Court of the United States that, for the purposes of Federal jurisdiction under the Constitution, it will presume that all of the stockholders of corporations of any particular state are citizens of that state, and hence the corporation itself is not only a "person," but a citizen thereof, was, it seems, eventually very reluctantly arrived at, and was slowly approached through a long line of decisions, beginning as long ago as 1809, with the case of Bank of United States v. Deveaux, 5 Cranch, 61, 3 L. ed. 38, and continuing thereafter for practically three quarters of a century. See St. Louis & S. F. R. Co. v. James, supra.

Not only have many members of the Supreme Court itself expressed their reluctance in dissenting opinions and otherwise at the gradual approaches made toward this holding, but other judges, text writers, and considerable numbers of the bar gen-

II. Porto Rico.—18.

erally, have criticized it.  Carter, Jurisdiction of Fed. Courts, pp. 27, et seq. and note.  "In its discussion, the Supreme Court was forced to practically reverse itself upon more than one occasion, and the dissenting opinions submitted by a minority of the court are vigorous in arguments and are repeatedly insisted upon at length."  Ibid.  See also 6 Thompson on Corporations, § 7448.

When, therefore, efforts were made to extend this holding of the Supreme Court of the United States so as to include joint stock companies and other artificial legal entities less than corporations, a storm of conflicting opinion and protest arose.

Judge Hammond, of the circuit court of the northern district of Ohio, in the case of Imperial Ref. Co. v. Wyman, 3 L. R.A. 503, 38 Fed. 574, expresses the protesting sentiment rather strongly in these words: "One has only to reflect a moment upon the well-known and interesting conflict, political and judicial, which has raged over the ruling of the Supreme Court that a corporation may, by a fiction, be brought within the designation of the constitutional term 'citizen of a state,' to see that the courts may well halt before extending any further, as our Constitution now stands, the business of creating artificial citizens of the states by taking within the fiction already established any other than legitimate corporations *de jure,* and thus acquiring jurisdiction over partnerships or associations that are called quasi corporations and corporations *de facto,* merely to obtain this jurisdiction; and I cannot, as now advised, assent to the circuit rulings in that direction.  .  .  . If the jurisdiction is to be maintained it is not by the assimilation of these nondescript organizations into corporations, for the Constitution does not use that term, but by an expansion of the power of the court and the selection of a similar material out of

which to manufacture other artificial 'citizens' of a similar or analogous character to those already admitted to this privilege of the Constitution. Or, to be more precise,—for it is admitted on all hands that this creation of an artificial 'citizen' is [the product of] a somewhat dubious process,—we are to extend the absolutely conclusive legal presumption in favor of corporations, that all the incorporators are citizens of the state granting the charter, to organizations which have no charter, strictly speaking, but, by authority of statute, exercise an analogous privilege of suing and being sued by a common name or style, instead of in their individual personalities. That the same reason may be given for extending the presumption as is given for its original establishment there can be no doubt; but whether its extension may not provide a too easy method of evading the Constitution deserves careful consideration at our hands."

This same conflict of judicial opinion exists as to whether limited partnerships, which are given some of the attributes of corporations by the statutes of several of the states, can be considered as within this doctrine of the Supreme Court, and it is said that, at least at circuit, there exists nearly as much difference of judicial opinion on the matter as there does about the main doctrine. Carter, Jurisdiction of Fed. Courts, p. 58. In fact, it was held in Youngstown Coke Co. v. Andrews Bros. Co. 79 Fed. 669, that such a concern, when it possessed many of the attributes of a corporation, under the laws of Pennsylvania, could sue in a Federal court of another state, irrespective of the citizenship of its individual members. That doctrine had been denied in Carnegie v. Hulbert, 3 C. C. A. 391, 10 U. S. App. 454, 53 Fed. 10.

A line of cases is also to be found, arising under the statutes of New York, holding for Federal jurisdiction in joint stock

Santana v. Marquez & Co.

association cases, because, under the laws of that state, such concerns have perpetual succession and can make contracts in the name thereof, and can sue and be sued in the name of the president or treasurer. Maltz v. American Exp. Co. 1 Flipp. 611, Fed. Cas. No. 9,002; Fargo v. Louisville, N. A. & C. R. Co. 10 Biss. 273, 6 Fed. 787; Baltimore & O. R. Co. v. Adams Exp. Co. 22 Fed. 404. These latter cases seem to proceed on the idea that when the suit is brought against the president or treasurer, he being a citizen of the state where the concern was created, there could be no objection to the jurisdiction. The same doctrine seems to be held as to joint stock companies of Pennsylvania. See Bushnell v. Park Bros. & Co. 46 Fed. 209.

But in the case of Liverpool & L. Life & F. Ins. Co. v. Massachusetts (Liverpool & L. Life & F. Ins. Co. v. Oliver) 10 Wall. 566, 19 L. ed. 1029, the Supreme Court of the United States held to the doctrine in joint stock association cases for several reasons, stating that it had an artificial name to contract under, could sue and be sued in the name of its officers, that it was an entity distinct from its members, and that its charter had a provision for its perpetuity by transfer of its shares. But it seems, under a later decision, announced in Chapman v. Barney, 129 U. S. 677, 32 L. ed. 800, 9 Sup. Ct. Rep. 426, the court held that nothing less than all of these attributes is sufficient to give Federal courts jurisdiction on the ground of citizenship.

It seems that under the civil law as in force in the state of Louisiana, partnerships are a legal entity, possessing some of the attributes of a corporation. Pilcher's Succession, 39 La. Ann. 362, 1 So. 929. And it was held in one case in that state, in a Federal court, that an alien could sue a partnership in that state, even when one of the partners was also an alien, because

Santana v. Marquez & Co.

of the partnership being a legal entity. Liverpool, B. & R. P. Nav. Co. v. Agar, 4 Woods, 201, 14 Fed. 615.

An examination of the articles of copartnership as originally entered into between the defendants in this case, and as extended in 1904, shows it to be nothing more or less than a plain partnership, with some of the provisions that usually characterize a limited partnership, as between the partners themselves. We have examined arts. 116 and 122 of the Code of Commerce, as well as § 35 of the Civil Code of Porto Rico, and the decision in the Bruguera Case in the Supreme Court of Spain, vol. 25, Jurisprudencia Civil, p. 457, all as cited by counsel for defendants in this case, and we find nothing in any of those laws that even attempts to do more with partnerships than to create them under certain circumstances into "judicial persons." Most of these Code provisions of the island as to partnerships, as we view them, are mere statements declaratory of the ordinary rights which the partners have any way. We cannot see what difference it would make for the court to determine to which of the several classes of partnership described in the local law the one in question belongs; nor do we pass upon the question as to whether certain provisions as to partnerships in the Commercial Code of the island, of which there appears to the court to be grave doubt, are actually in force or not. In the absence of any articles of copartnership, this defendant firm could, in our opinion, be sued in the manner in which this suit is brought against it. Neither do we consider it material to decide whether or not it is a compañia en comandita or whether it possesses a separate judicial personality of and by itself, distinct from its members, by which it can sue and be sued; because, even though it be held to be a "judicial person," it possesses none of the attributes of either a joint stock company or a corporation, such

as having negotiable shares of capital stock, perpetual succession, a corporate seal, etc., and this is far from being a joint stock company or corporation of the important character regarding which the Supreme Court of the United States so reluctantly indulges the nonimpeachable presumption that all of its stockholders are citizens of the state granting its charter. In the light of all the criticism against the main ruling above referred to, it must be admitted that the court ought not to be asked to hold that little mercantile concerns or partnerships in Porto Rico are citizens in the jurisdictional sense here referred to.

In this case the declaration itself sets out that the defendants compose a firm and are subjects of the King of Spain; and, in any event, we are of opinion that the proper diverse citizenship to give this court jurisdiction exists, and the motion to dismiss will therefore be overruled and the cause permitted to stand for trial on issue joined by the plea.