### MATHIS v. SOUTHERN RAILWAY CO.

1. Corporations—Removal of Causes—Jurisdiction—Railroads. A foreign corporation operating a railroad in this and other States, which has complied with the requirements of the act of 1896 (22 Stat., 92), is under the Constitution of 1895 (art. 9, sec. 8), a domestic corporation, and cannot remove a case against it out of the Courts of this State to the United States Circuit Court, upon the ground of diverse ·citizenship.

2. Practice—Appeal—Cross-Examination.—When a party on cross-examination brings out testimony to which he objected when brought out in chief, he cannot afterwards on appeal except to the admission of the testimony in chief.

3. Appeal—Objection—Practice.—If on the trial testimony is objected to as cumulative, on appeal it cannot be excepted to as incompetent.

Before Klugh, J., Lexington, September, 1897. Affirmed.

Action by M. F. Mathis *v.* Southern Railway Company. From judgment for plaintiff, defendant appeals.

*Mr. B. L. Abney,* for appellant, cites: *Upon removal of*

*the cause:* 104 U. S., 5; 19 Wall, 214; 106 U. S., 118; 117 U. S., 430; 103 U. S., 485; 131 U. S., 240; 81 Fed., 984; 122 U. S., 513; U. S. Con., art. 3, § 2, art. 6, subd. 2, art. 1, § 8; Act of 3d March, 1887; 161 U. S., 545; 75 Fed., 440; 167 U. S., 663; 100 U. S., 457. *Testimony as to marriage and children incompetent:* 102 U. S., 451; 81 Fed., 807; 85 Tenn., 465; 74 Ill., 343; 65 Ill., 160; 4 Gill, 406; 103 Mo., 570; 31 A. & E. R. Cas., 249. *Testimony as to written requisition without notice to produce incompetent:* 2 Rich., 154; 21 S. C., 420.

*Messrs. G. T. Graham* and *P. H. Nelson*, contra, cite: *Upon removal of the cause:* 22 Stat., 92; 161 U. S., 802; 107 U. S., 518; Con. 1895, sec. 8, art. IX.; 48 S. C., 49; Circuit decree Judge Benet, Richland, 19th July, 1897. *Plaintiff was non-resident, hence defendant not entitled to removal:* 5 S. E. R., 745; 14 Ib., 777, 778; 17 Ib., 169, 173; 28 S. E. R., 303. *Testimony as to wife and children immaterial and not reversible error:* 52 S. C., 1; 51 S. C., 306; 14 S. C., 553; 16 S. C., 102; 17 S. C., 134; 24 S. C., 340. *Testimony as to requisition only cumulative, and that is matter of discretion:* 16 S. C., 495; 17 S. C., 134; 9 S. E. R., 1039; 15 S. E. R., 562. *Besides defendant brought out the same in part and cannot complain:* 52 S. C., 1; 51 S. C., 306.*

Sept. 28, 1898. The opinion of the Court was delivered by

MR. JUSTICE POPE. This action was brought on for trial before his Honor, Judge Klugh, and a jury, and resulted in a verdict for the plaintiff for the sum of $1,500. After judgment therefor the defendant appealed therefrom on five grounds, but at the hearing before this Court it abandoned the fourth ground. The first two grounds relate to the refusal of the Circuit Judge to recognize the effort of the defendant to procure a removal of the action for trial from the Court of Common Pleas for Lexington, in this State, to the Circuit Court of the United States for the District of South Carolina, as an objection to the trial of the cause in the

former Court. These grounds will be considered together. It is needless to remark that if the defendant is entitled to the removal prayed for, it is our solemn duty to accord the right; and not only is it our duty but it should be our pleasure—for if such right exists it must be admitted.

In order to properly understand these questions, we deem it proper to set out in this opinion copies of the complaint and other papers bearing on the question of removal:

COMPLAINT.—The plaintiff complains of the defendant, and alleges: 1. That at the time hereinafter mentioned the defendant was and is now a corporation duly authorized, under the laws of the State of South Carolina, to maintain, equip, conduct, and operate a general railroad business in said State; and, under such authority, the said defendant owns a railroad; together with the track, cars, locomotives, lever car, and other appurtenances thereto belonging, and then and now operates the same through the county of Lexington, in said State. 2. That the plaintiff, on the 14th day of May, 1895, at the time of the committing of the grievances hereinafter mentioned, was in the employment of the defendant as foreman of section No. 17, a place where a foreman and several hands are kept to repair and keep up the railroad track, which section is situated along said railroad, in Lexington County, in said State, near the town of Lexington, S. C.; and while at work upon said railroad, in said section, the plaintiff and other hands or servants of the defendant were conveyed from place to place along said railroad within said section by a lever car, the property of the defendant, which was operated by the servants of the defendant; and it was the duty of the defendant to provide a good, safe and secure lever car, with good, safe and secure machinery and apparatus. 3. That yet the defendant, not regarding its duty, conducted itself so carelessly, negligently and unskillfully in this behalf, that it provided and used an unsafe, defective and insecure lever car, of which it had notice. 4. That for want of due care and attention to its duty in that behalf, on the said 14th day of May, 1895, be-

tween Lewiedale and Lexington stations, along said railroad,
in said county, and while the said lever car was in the use
and service of the defendant upon its said railroad, and
while plaintiff was on the same, in the capacity aforesaid
for the defendant, one of the wheels of said lever car, by
reason of unsafeness, defectiveness and insecurity thereof,
struck a plank between the rails of said railroad track,
thereby causing the said lever car to be thrown from the
track, the plaintiff to fall in front of said car, which struck
him in the back, ran over his right foot, knocked out two
of his front teeth, and inflicted other painful and serious
wounds on plaintiff's left knee, side and face.   5. That by
reason of the negligence and carelessness of the defendant,
the plaintiff was not only painfully and seriously bruised and
wounded, but was permanently injured.   6. That thereby
plaintiff became ill, and was confined to his bed for more
than a month, and has not yet been able to resume his du-
ties, and he was obliged to and did expend a considerable
sum of money in attempting to cure himself, and he was
otherwise injured to his damage $10,000.   Wherefore, plain-
tiff demands judgment against the defendant for $10,000,
and for costs.

On the 31st day of August, 1897, and before the time
that the defendant was required by the laws of the State of
South Carolina, or the rules of the Circuit Court of Common
Pleas of said State, to answer the said complaint, the de-
fendant, the Southern Railway Company, filed its petition
and bond in the Circuit Court of Common Pleas for Lex-
ington County, in the usual manner of filing papers.   The
following is a copy of said petition:

PETITION TO REMOVE CAUSE TO UNITED STATES CIR-
CUIT COURT.—To the honorable the Court of Common
Pleas for the county of Lexington, in the State aforesaid:
Your petitioner, the Southern Railway Company, a corpo-
ration created by and existing under the laws of the State
of Virginia, respectfully shows: That it is the defendant in
the above entitled suit; that it is a non-resident of the State

in which said suit is brought, to wit: the State of South
Carolina; and that the matter and amount in dispute in said
suit exceeds, exclusive of interest and costs, the sum or
value of $2,000; that the said suit is of a civil nature, being
an action for $10,000 damages, for personal injuries to the
plaintiff, caused on the 14th day of May, 1895, as it is al-
leged, by the negligence of the defendant, while he was in
its employment as foreman of a section of its road, situate
in Lexington County and State of South Carolina, and while
being carried over said road on a lever car; said negligence
consisting of, as it is alleged, in that said lever car was unsafe
and defective, whereby one of the wheels of said car caused
the same to be thrown from the track, and plaintiff thrown
from the car and struck by it and injured.    That the con-
troversy in said suit is wholly between citizens of different
States, to wit: between your said petitioner, who avers that
it was, at the commencement of this suit and still is, a citi-
zen and resident of the State of Virginia, being a corpora-
tion created by and existing under the laws of said State,
and the plaintiff, who, as your petitioner avers, was then,
and still is, a citizen of the State of South Carolina; and
that both the said Mathis and your petitioner are actually
interested in said controversy.

Your petitioner further shows that prior to June 1, 1892,
the Richmond and Danville Railroad Company, a corpora-
tion of the State of Virginia, the predecessor of your peti-
tioner, was a railroad corporation lawfully engaged in
interstate commerce, and lawfully operating under owner-
ship, lease or traffic contracts, the various railroads in Vir-
ginia, North Carolina, Georgia, Alabama, and including the
railroads of the following companies in the State of South
Carolina, viz: The Charlotte, Columbia and Augusta Rail-
road Company, the Columbia and Greenville Railroad Com-
pany, the Atlanta and Charlotte Air Line Railroad Com-
pany, besides others.    That on or about the 1st day of
October, 1886, the said Richmond and Danville Railroad
Company, being thereunto authorized by the laws of the

State of Virginia and the State of South Carolina, made its certain consolidated mortgage, selling, assigning, and transferring its rights, title, and interest in and to each and every one of said railroads as security for the payment of a series of bonds for millions of dollars, issued for value to the general public.

On or about the 15th day of July, 1893, the said Richmond and Danville Railroad Company made default in the payment of the interest falling due upon bonds secured by such consolidated mortgage, and thereupon the trustee therein named, the Central Trust Company, instituted suit for the foreclosure of such mortgage and for the sale of such mortgaged premises in the United States Circuit Court for the Fourth Circuit in the Eastern District and in the District of South Carolina. Such proceedings were had in such suit and pursuant to the decrees of said courts, that on or about the 15th day of July, 1893, receivers duly appointed therein by said courts took possession of some or all of said roads, and continued in possession thereof until on or about the 20th day of June, 1894, when the right, title, and interest of the said the Richmond and Danville Railroad Company therein was duly sold under such foreclosure to the holders of said consolidated mortgage bonds; and such sale being forthwith duly confirmed by said courts, said purchasers thereupon, in accordance with the laws of the State of Virginia, organized the corporation, your petitioner, the Southern Railway Company, which has ever since held and operated the Richmond and Danville Railroad in the State of Virginia, and other railroads, and also the Atlanta and Charlotte Air Line, as such purchasers of the rights of the Richmond and Danville Railroad Company therein; and forthwith your petitioner, the Southern Railway Company, did make and file in the office of the secretary of state of South Carolina, the certificate required by law to enable your petitioner to transact business in said State, and did comply with every provision of law imposing upon foreign corporations any requirement as a condition prece-

dent to transacting business in the State of South Carolina, and at all times since your petitioner has complied, and has endeavored in every way to comply, and is still willing to comply, with each and every lawful condition of the State of South Carolina, to enable your petitioner as a railroad corporation of the State of Virginia to transact its business as a common carrier engaged in interstate commerce within the State of South Carolina. That prior to the 1st day of January, 1893, the Charlotte, Columbia and Augusta Railroad Company and the Columbia and Greenville Railroad Company each was a railroad corporation duly existing and operating its railroad under the laws of the State of South Carolina, and in accordance with such laws, each of said railroad corporations had duly mortgaged its said railroads, estates, properties, and franchises to secure the payment of a series of bonds issued for value to the general public.

Upon or before the 15th day of July, 1893, each of the said railroads made default in the payment of the interest falling due upon the bonds secured by such mortgages respectively, and thereupon the trustee therein named, the Central Trust Company, instituted suits for the foreclosure of such mortgages and for the sale of said mortgaged premises in the United States Circuit Court for the Fourth Circuit in the District of South Carolina, and such proceedings were had in such suits; and pursuant to the decrees of the said Court, that on or about the 15th day of July, 1893, receivers duly appointed therein by said Courts took possession of said two railroads, and continued in possession thereof until on or about the 10th day of July 1894, when the right, title and interest of each of the said two railroad companies, respectively, was duly sold under such foreclosure of such two mortgages, respectively, to your petitioner, the Southern Railway Company, which then and there, in accordance with the laws of South Carolina, was the owner of substantially all of the bonds issued under and secured by the said two mortgages then being foreclosed, and was also the owner of railroads connecting with

the said two railroads then being sold under foreclosure and became the purchaser of said two railroads; all of which facts were duly set out in the master's report of such sales in such suits, which sales were duly confirmed, and your petitioner duly accepted as such purchaser by the United States Circuit Court for the Fourth Circuit for the District of South Carolina; and ever since as such purchaser your petitioner has been and is now engaged in the operation of the said two railroads in the State of South Carolina as part of its system of interstate commerce, having complied with all provisions of the law of South Carolina entitling it to purchase, own and operate such railroads. That on or about the 1st day of January, 1895, your petitioner, the Southern Railway Company, then being the lawful owner as aforesaid of these various railroads and railroad properties and franchises, as well as of railroads, railroad properties and franchises in various States of the Union, made and issued its certificates of stock representative of interests in such railroads and railroad system as an entirety, and also its mortgage bonds secured by lien thereon, and such certificates of stock and bonds to the aggregate amount exceeding $200,000,000 have been sold and issued, and are now outstanding throughout the United States of America and Europe; and ever since said time and now it is beyond the power of your petitioner, the Southern Railway Company, to sell or to transfer the railroads in South Carolina, constituting a part of its entire system, free of such stock and obligations, to another corporation formed or to be formed under the laws of South Carolina; and the preservation of its rights and titles, lawfully acquired by it as a Virginia corporation, is dependent upon the continuing recognition and maintenance of its said rights and of its exercise thereof in the State of South Carolina as a Virginia corporation duly and hospitably admitted within the sovereign State of South Carolina, pursuant to the laws thereof, on the 10th day of June, 1894. That your petitioner, as a common carrier, owns, controls and operates many lines of railway,

extending from the city of Washington, in the District of Columbia, through different adjoining States of the Union, but constituting one system and under one management. That as such common carrier, your petitioner has contracts for carrying the United States mails, and has been since its organization, and is now, engaged in so doing; that your petitioner is also carrying passengers and freights over its lines between different States, and has many, and is performing many, other special contracts in its capacity of common carrier, constituting commerce between the States. That the lines of railway in the State of South Carolina so controlled and operated by your petitioner as aforesaid, are connecting links in a through line of railway owned, controlled and operated by your petitioner, and having the termini in different States, and as such constitute part of the machinery whereby your petitioner carries on commerce between the States. That among the laws of the State of South Carolina, under and by virtue of which your petitioner purchased and is now operating its aforesaid lines in the State of South Carolina, is an act of the General Assembly of the said State, entitled "An act to declare the terms on which foreign corporations may carry on business and own property in the State of South Carolina," approved December 20, 1893 (XXI. Stats., 411), and your petitioner claims that it has fully complied with all the terms and conditions of said act ever since it has owned property or done business in the State of South Carolina.

That your petitioner further shows that on the      day of January, 1897, it did file in the office of the secretary of state of the State of South Carolina a copy of its charter, authenticated in the manner directed by law for the authentication of the statutes of the State of Virginia, under whose laws it was chartered and organized; and did further, on the 15th day of April, 1896, and prior to the alleged injury to the said Mathis, cause a copy of said charter to be recorded in the office of the register of mesne conveyances in Lexington County, in said State, in which said county it was car-

rying on its business as a carrier of goods and passengers; that said acts were done in compliance with the act of the General Assembly of the State of South Carolina, entitled "An act to provide the manner in which railroad companies, incorporated under the laws of other States or countries, may become incorporated in this State," approved 19th March, 1896. But your petitioner is advised that by such acts it did not deprive itself of the right as a citizen of the State of Virginia to remove causes and actions brought against it by the citizens of South Carolina in the courts of said State to the United States Circuit Courts sitting in said State, under the acts of Congress in such cases made and provided; nor do such acts done by it deprive such Federal Courts of the jurisdiction to hear and determine such causes when so removed.

And your petitioner offers herewith a bond, with good and sufficient surety, for its entering in said Circuit Court of the United States for the District of South Carolina, on the first day of its next session, a copy of the record in this suit, and for paying all costs that may be awarded by said Circuit Court, if said Court shall hold that this suit was wrongfully or improperly removed thereto. And it prays this Court to proceed no further herein, except to make an order of removal, and to accept the said surety and bond, and to cause the record herein to be removed into the said Circuit Court of the United States in and for the District of South Carolina.

It will be observed that the petition sets forth that it, the appellant, owns and operates certain railroads chartered by this State. Among these are the Charlotte, Columbia and Augusta Railroad Company, and the Columbia and Greenville Railroad Company, both of which corporations were sold under foreclosure proceedings in the United States Circuit Court for the District of South Carolina, and at such sale were purchased by the Southern Railway Company. But the petition nowhere sets up that by reason of such sale the Southern Railway Company is the successor of the originally chartered Charlotte, Columbia

and Augusta Railway Company; the latter corporation still exists, and no other change in such corporate entity has been produced by such sale than a change in the owners or stockholders.   Our Constitution and our statutes, speaking for the State of South Carolina, can only operate within the territorial limits of the State of South Carolina.   Therefore, when the Constitution of 1895 declared in article IX., "Section 8: The General Assembly shall not grant to any foreign corporation or association a license to build, operate or lease any railroad in this State; but in all cases where a railroad is to be built or operated, or is now being operated in this State, and the same shall be partly in this State and partly in another State or in other States, the owners or projectors shall first become incorporated under the laws of this State; nor shall any foreign corporation or association lease or operate any railroad in this State, or purchase the same or any interest therein * * *;" so now it is through the Charlotte, Columbia and Augusta Railway Company that the Southern Railway Company, in the action at bar, alone can be affected; for it is on the line of the track of the Charlotte, Columbia and Augusta Railway Company that the plaintiff respondent was injured, by and through the defendant railway, by means of the hand car thereon operated, while such plaintiff resided in the county of Lexington, in this State.   No other rights and duties of the Southern Railway Company can arise in the case at bar than as such rights and duties flow from the ownership and operation of the said Charlotte, Columbia and Augusta Railway Company by the defendant appellant, the Southern Railway Company.   Whatever may have been the rights and duties of this Southern Railway Company to, by, and through its ownership of the Charlotte, Columbia and Augusta Railway Company prior to the decision of the case of *The State ex rel. Southern Railway Company* v. *D. H. Tompkins, as Secretary of State of South Carolina*, 48 S. C., 49, we will not inquire.   But we will notice the fact, that the State of South Carolina has asserted, and her own courts

and the United States Supreme Court have recognized, her power to alter or amend the charter of said Charlotte, Columbia and Augusta Railway Company as such State of South Carolina, through her General Assembly, might, by legislative action, declare.   *C., C. & A. R. R.* v. *Gibbes, as Co. Treas.,* 27 S. C., 385; same case, 142 U. S. Supreme Court, 386; *McCandless* v. *Richmond and Danville Railroad Company,* 38 S. C., 103.   When, therefore, the Constitutional Convention, in the year 1895, ordained art. 9, sec. 8, as quoted hereinbefore, that any corporation, to operate as owner or lessor the said Charlotte, Columbia and Augusta Railway Company, should be a domestic corporation; and when the General Assembly of this State passed the act to provide for the formation of certain corporations and to define the powers thereof—22 Stat. at Large, 92— and when, under that act of our General Assembly, the Southern Railway Company petitioned to be made a corporation under the laws of South Carolina, to the end that she might operate the said Charlotte, Columbia and Augusta Railroad Company within the territorial limits of the State of South Carolina; and when, under an action therefor, the Supreme Court of this State declared, on the petition of said Southern Railway Company, that said act was constitutional, and the petitioner was entitled to be made a domestic corporation (*State ex rel. Southern Railway Company* v. *Tompkins, Secretary of State,* 48 S. C., 49), we can see no great difficulty in the way of regarding the Southern Railway Company a domestic corporation.   If it is a domestic corporation, then it is not entitled to the benefit of those provisions of the act of Congress of the United States governing the removal of causes from the State Courts to the United States Circuit Courts because of diverse citizenship.   We will not enlarge upon the questions here presented, conceiving, as we do, that the foregoing answer is sufficiently explicit.   To those who may feel an interest in the investigation of those questions, we refer them to our own case of *The State* v. *The Port Royal and Augusta Ry*

17—53

*Co.*, 45 S. C., 413; *R. R. Co.* v. *Koontz*, 104 U. S., 5; *Ins. Co.* v. *Dunn*, 19 Wall, 214; *Steamship Co.* v. *Tugman*, 106 U. S., 118; *Stone* v. *S. C.*, 117 U. S., 430; *Kerr* v. *Huidekoper*, 103 U. S., 485; *Martin* v. *Railroad Co.*, 151 U. S., 673; *Tennessee* v. *Bank*, 152 U. S., 454; *Postal Tel. Cable Co.* v. *Alabama*, 155 U. S., 487. We, therefore, overrule these exceptions relating to removal.

The next exception, which is the third, relates to an objection to the plaintiff testifying as to his marriage and the number of his children and their ages. This precise point was raised in *Johns* v. *R. R. Co.*, 39 S. C., 162, and it was there held that such testimony was not material. *But the appellant here, in his cross-examination*, called forth testimony from this same witness in regard to his children. The exception is overruled.

Lastly, the fifth exception relates to the admissibility of testimony concerning a requisition made by plaintiff upon the defendant for an additional push car (a hand car). To make this clear, we will state that the requisition was in the hands of the defendant, and no notice to produce the same had been given by the plaintiff. By the "Case," it appears that when the plaintiff was about to testify that he had made a requisition upon the defendant in May, 1895, for a fresh or new push car, objection was made on the ground that such testimony was cumulative. This is quite a different objection to that embodied in the exception. Counsel will be confined to the rulings actually made by the Circuit Judge. In addition, it seems that the witness of defendant was called upon to testify by the defendant in regard to this requisition. If so, the plaintiff in reply could refer by testimony to such requisition. We see no error here.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.