## WILSON v. SOUTHERN RY. CO.

1. APPEAL will not be dismissed for failure to serve "Case" and exceptions in time, where delay has been occasioned by unavoidable failure of stenographer to furnish transcript of evidence and charge.

2. REMOVAL OF CAUSES—NON-RESIDENT—DIVERSE CITIZENSHIP.—A railroad corporation created by a foreign State, but doing business in this State as a domestic corporation, under the provisions of 22 Stat., 114, is a non-resident of this State, and may remove into the U. S. Circuit Court under U. S. Statute, on the ground of diverse citizenship, a suit brought against it in a State Court by a citizen of this State. *Mathis* v. *Southern Ry.*, 53 S. C., 257, overruled.

3. APPEAL—REMOVAL OF CAUSES.—Upon refusal by State Court of motion to remove cause to U. S. Circuit Court and notice of appeal therefrom, the State Court may, under Code, 356, proceed to try the · case, the return not having been filed in Supreme Court. *Not considered by whole Court en banc.*

4. RAILROADS—ORDINANCES—NEGLIGENCE—CHARGE.—Where there is no controversy as to the validity of a town ordinance as to speed of trains of its terms, or violation, there is no error in instructing the jury that its violation is negligence *per se. Not considered by whole Court en banc.*

Before BUCHANAN, J., Fairfield, September, 1899. Reversed.

Action by John Wilson, administrator of Noah Y. Wilson, for negligent killing, against Southern Ry. Co.

A motion was made in this case to dismiss appeal because

appellant had not served the "Case" and exceptions in the time prescribed by the rules of Court. Notice of intention to appeal was served on 9th October, 1899, and case containing exceptions not until December 5, 1899. At hearing, it appeared that trial Judge on *ex parte* application of appellant had extended time for such service at one time for twenty days and at another for ten days, on ground that Court duties of stenographer prevented his furnishing the evidence and charge. The motion was refused in open Court.

From judgment on Circuit, defendant appeals.

*Mr. B. L. Abney,* for appellant, cites: *As to removal of causes:* 161 U. S., 545; 48 S. C., 49; U. S. Con., art. III., sec. 2; art. VI., subd. 2; art. I., sec. 8; U. S. Stat., March 3, 1887; 5 Cranch, 68; 2 How., 497; 16 How., 314; 174 U. S., 552; 167 U. S., 663; 86 Fed. R., 353; 170 U. S., 106; 172 U. S., 259; 89 Fed. R., 119; 96 Fed. R., 504. *Oral argument before Court en banc.*

*Messrs. G. T. Graham* and *Ragsdale & Ragsdale,* contra, cite before both Courts: *On same point:* 53 S. C., 246; 174 U. S., 552; 94 U. S., 444; 136 U. S., 356; 31 U. S. App., 325; 13 C. C. A., 668; 66 Fed. R., 665; 32 U. S. App., 691; 29 Fed. R., 609; 39 Fed. R., 227; 44 Fed. R., 573; 45 Fed. R., 812; 10 Bliss, 122; 5 Fed. R., 19; 25 Bliss, 144; 136 U. S., 356; 161 U. S., 545.

August 2, 1900. The opinion of the Supreme Court was delivered by

MR. JUSTICE JONES. This action was brought in the Court of Common Pleas for Fairfield County for damages for the alleged negligent killing of plaintiff's intestate by the defendant corporation, and resulted in a judgment in favor of the plaintiff for $4,500. A petition and bond for the removal of the cause to the Circuit Court of the United States for the District of South Carolina on the ground of diverse

citizenship was duly filed, and on the call of the case for trial, the Court, Hon. O. W. Buchanan, presiding, was asked to proceed no further except to pass an order for removal. This was refused and notice of appeal and exceptions was immediately served. After judgment on the verdict of the jury, exceptions were taken to the order refusing to remove, to ruling compelling defendant to proceed to trial, and to the judgment and rulings of the Court.

The first question presented is whether there was error in refusing to remove the cause to the United States Court. The plaintiff was a citizen of South Carolina, and alleges in the complaint that the defendant was a corporation under the laws of this State. The petition for removal alleged that the defendant, at the commencement of the suit and at the filing of the petition, was a citizen and resident of the State of Virginia, being a corporation created under the laws of that State. It is not disputed that the defendant was originally created a corporation under the laws of Virginia, and thereafter complied with the act of the General Assembly of this State, approved March 19, 1896, 22 Stat., 114, entitled "An act to provide the manner in which railroad companies incorporated under the laws of other States or countries may become incorporated in this State." This act was construed, in connection with sec. 8, art. IX., of the Constitution, in the case of *Southern Railway Co.* v. *Tompkins*, 48 S. C., 58, wherein the Court, speaking by Judge Witherspoon, A. A. J., said: "A State by its legislature may impose upon foreign corporations, which seek to come within its limits to conduct their business, the condition that they shall be subjected to the duties and obligations of domestic corporations. In short, that they shall be, when so acting within the territorial limits of the State, domestic corporations for the purpose of jurisdiction. The question whether the legislature of a State has adopted and domesticated a corporation created by another State, is in any case purely a question of legislative *intent.* 6 Thompson on Corp., sec. 7890; Murfree on Foreign Corp., sec. 455. It

was competent for the legislature of this State to provide by
the act under consideration for the adoption of foreign cor-
porations as domestic corporations, without violating the sec-
tion of the Constitution above quoted (sec. 8, art. IX.).   The
title of the act under consideration, and the *third* section
thereof, clearly shows that such was the *intention* of the leg-
islature.   Under the *third* section of said act, a foreign cor-
poration complying with the provisions of said act, *ipso
facto* becomes a domestic corporation, enjoying the rights and
subject to the liabilities of domestic corporations 'as fully as
if it were originally created under the laws of this State.' "
In that case it was also held that the Southern Railway Com-
pany had complied with said statute.   Thereafter, in the case
of *Mathis* v. *Southern Railway Company,* 53 S. C., 257, this
Court held that said Southern Railway Company having be-
come a domestic corporation by compliance with said act,
was not entitled to the benefit of the provisions of the act of
Congress of the United States governing the removal of
causes from the State Courts to the United States Circuit
Court, because of diverse citizenship.   We have been in-
duced to review the case of *Mathis* v. *Southern Railway,
supra,* and after careful consideration have reached the con-
clusion that it is not in harmony with the recent decisions of
the United States Supreme Court, by which this Court must
be controlled on questions of this kind.   The Mathis case
was supposed to be in harmony with the decisions in *Mem-
phis R. Co.* v. *Alabama,* 1 and 2 Supt. Ct. Rep., 432,
wherein it seemed to hold that the Memphis and Charleston
Railroad Company, previously incorporated in Tennessee
and aftewards made an Alabama corporation by the statutes
of Alabama, could not remove into the Circuit Court of the
United States a suit brought against it in Alabama by a
citizen of Alabama.   But this Court failed to observe the dis-
tinction between the *creation* of a *new* corporation out of
natural persons, and the mere *adoption* of a foreign corpora-
tion as a domestic corporation for local purposes.   A corpo-
ration is indisputably presumed to be composed of citizens

of the State *creating* it, and, for purposes of federal juris-
diction, the citizenship of its corporators is imputed to the
corporation.    In the case of *St. Louis & S. F. Ry. Co.* v.
*James,* 16 Sup. Ct. Rep., 627, the Supreme Court of the
United States refused "to extend the doctrine of indisputa-
ble citizenship, so that if a corporation of one State, indispu-
tably taken, for the purpose of federal jurisdiction, to be com-
posed of citizens of such State, is authorized by the law of
another State to do business therein, and to be endowed for
local purposes with all the powers and privileges of a domes-
tic corporation, such adopted corporation shall be deemed to
be composed of citizens of the second State, in such sense as
to confer jurisdiction on the Federal Court, at the suit of a
citizen of the State of its original creation."    As the
right of removal depends upon diverse citizenship, we take it
that the United States Court, upon the principle announced
above, would not extend the doctrine of indisputable citizen-
ship to a corporation originally created in one State and
afterwards adopted as a domestic corporation in another
State, so as to make such adopted corporation a "citizen"
also of the second State.    This, we think, is made clear by
the following language of the Court in the James case, re-
ferring to an act by the legislature of Arkansas similar to
the South Carolina act, under which defendant became a
domestic corporation : "It is true, that by the subsequent act
of 1889, by the proviso to the second section, it was provided
that every railroad corporation of any other State, which had·
theretofore leased or purchased any railroad in Arkansas,
should within sixty days from the passage of the act file a
certified copy of its articles of incorporation or charter with
the secretary of State, and shall thereupon become a corpo-
ration of Arkansas, anything in its articles of incorporation
or charter to the contrary notwithstanding; and it appears
that the defendant company did accordingly file a copy of its
articles of incorporation with the secretary of State; but
whatever may be the effect if such legislation in the way of
subjecting foreign railroad companies to control and regu-   ·

lation by the local laws of Arkansas, we cannot concede that it availed to create an Arkanses corporation out of a foreign corporation in such a sense as to make it a citizen of Arkansas, within the meaning of the Federal Constitution, so as to subject it as such to a suit by a citizen of the State of its origin.    In order to bring such an artificial body as a corporation within the spirit and letter of that Constitution, as construed by the decisions of this Court, it would be necessary to create it out of natural persons, whose citizenship of the State creating it could be imputed to the corporation itself.    But it is not pretended in the present case that natural persons, resident in and citizens of Arkansas, were, by the legislature in question, created a corporation, and that, therefore, the citizenship of the individual corporators is imputable to the corporation."    By reference to the South Carolina Statute referred to, it will be seen that it did not undertake to create a new corporation out of natural persons, but merely provided a mode by which foreign corporations might become domestic corporations.    Sec. 3 provides : "That when a foreign corporation complies with the provisions and requirements of this act (by filing in the office of the secretary of State a copy of its charter, paying therefor such fees as may be required by law, and causing a copy of such charter to be recorded in the office of the register of mesne conveyances or clerk of the Court of Common Pleas in each county in which such company or corporation desires or proposes to carry on its business or acquire or own property), it (the foreign corporation) shall, *ipso facto*, become a domestic corporation, and shall enjoy the rights and be subject to the liabilities of such domestic corporation; it may sue and be sued in the Courts of this State, and shall be subject to the jurisdiction of this State as fully as if it were originally created under the laws of the State of South Carolina."    Inasmuch as this legislation and the proceedings thereunder created no new corporation out of natural persons, but merely domesticated or adopted an existing corporation, there can be no "citizenship" of corporators imputed to the corporation

as adopted, except the indisputable citizenship of the original corporation. So in the case of *Louisville & C. Ry. Co.* v. *Trust Co.,* 19 Sup. Ct. Rep., 817, the Court, citing James' case, *supra,* held that for purposes of federal jurisdiction, a corporation remains a citizen of the State originally creating it, notwithstanding it be afterwards also made a corporation of another State.

In the argument of the case of William McCabe *v.* Southern Railway Company, which was heard during the present term, and involved also the question of removal, counsel for appellant, Messrs. Andrew Crawford and J. S. Muller, raised a point not directly raised in this case at bar, but which we deem proper to be considered now, viz: whether the defendant can be considered a "non-resident" of this State, in the sense of the federal statute of 1887-8, governing removal of causes. In the first place, the petition for removal alleges that the defendant is a non-resident of this State. This allegation of fact was not traversed, and, as we understand, is not properly traversible except in the Circuit Court of the United States after removal; therefore, for the purposes of the present contention, it appears as a fact that the defendant is a non-resident of this State. In the second place, while "citizenship" and "residence" are not always synonymous, we are of opinion that a foreign corporation, though domesticated in this State, being a citizen of the State originally creating it, must be deemed to have its domicile or residence in the State of its creation, and so is a non-resident of this State, in the sense of the statute governing removals, whatever may be the view as relating to mere local matters not affecting federal jurisdiction. As stated in *Ex parte Shaw,* 12 Sup. Ct. Rep., 937: "The legal existence, the home, the domicile, the habitat, the residence, the citizeship of a corporation, can only be in the State by which it was created, although it may do business in other States whose laws permit it."

We must, therefore, hold that the defendant was entitled to remove the cause to the Circuit Court of the United States,

being a citizen and resident of Virginia, and that it was error to proceed with the trial in the State Court.

This conclusion renders it unnecessary to consider any other question presented.

The judgment of the Circuit Court is reversed.

MR. JUSTICE POPE *dissents,* and reserves the privilege of hereafter filing a dissenting opinion.

Remittitur stayed on petition for rehearing and submission to Court *en banc.* The petition was granted and case ordered submitted to Court *en banc,* August, 1901.

May 6, 1902. The opinion of the Court *en banc* was delivered by

MR. JUSTICE JONES. For reasons stated in an opinion prepared by me in the case of W. A. Calvert *v.* Southern R. R. Co., which was heard with this case, and stated also in an opinion in this case and reported herewith on its original hearing, I think the Circuit Court committed reversible error in refusing to remove the cause to the Federal Court, and in proceeding with the trial.

Under this view, the other questions presented by the exceptions do not properly arise and need not be considered.

Judgment reversed.

MR. CHIEF JUSTICE McIVER and CIRCUIT JUDGE ALDRICH *concur.*

MR. JUSTICE POPE and CIRCUIT JUDGE TOWNSEND *dissent.*

CIRCUIT JUDGE WATTS *concurring.* The question here being a federal question, the State Court is bound to follow the decision thereon by the United States Supreme Court, the tribunal invested with power to finally determine such questions; and under my construction of the decisions of that Court in the case of *St. Louis & S. F. Ry. Co.* v. *James,* 161 U. S., 545, and *Louisville, N. A. & C. Ry. Co.* v. *Louisville*

*Trust Co.*, 174 U. S., 552, and other cases quoted by Mr. Associate Justice Jones in his opinion, in Calvert *v.* Southern Ry. Co., I cannot do otherwise than concur in the opinion of Mr. Justice Jones. At the same time, I concur in so much of the opinion of Mr. Justice Gary which states that we are bound either to follow the principles announced by our Supreme Court, in *State ex rel. Southern Ry. Co.* v. *Tompkins*, 48 S. C., 49, or it should be overruled. My opinion is that these opinions quoted *supra,* will have the effect of overruling the Tompkins case, and that case will necessarily be overruled when properly brought before the Court.

MR. JUSTICE GARY *dissenting*. This is an action by the administrator of the estate of Noah Y. Wilson, deceased, a citizen of Lexington County, State of South Carolina, for damages arising from the alleged negligent killing of the deceased by the defendant, at Winnsboro, S. C., a station on the railroad of the defendant, and resulted in a judgment in favor of the plaintiff for $4,500. The corporate existence of the defendant is thus alleged in the complaint:

"2. That the defendant, the Southern Railway Company, is a corporation created and existing under the laws of this State, and was at the time hereinafter mentioned controlling and operating as owner thereof, a railroad known as the Charlotte, Columbia and Augusta Railroad (a corporation duly created under the laws of this State), extending from Charlotte, in the State of North Carolina, through the State of South Carolina to the city of Augusta, in the State of Georgia, and having stations along said railroad in the county of Fairfield, in the State of South Carolina, for the transaction of business, and also has, in the city of Columbia, S. C., offices where it transacts and manages its business; and the defendant owned and operated, and now owns and operates, the locomotives, cars and other appurtenances of said railroad." The complaint also alleges that the defendant violated the ordinance of the town of Winnsboro, making it a misdemeanor "for any person or persons to run, or cause to

be run, any train of cars through the town of Winnsboro at a greater rate of speed than six (6) miles per hour."

The defendant answered the complaint as follows:

"*For the first defense.*

"1. Denies each and every allegation therein contained except so much thereof as is hereinafter admitted.

"2. Alleges that it is, and was at the time of the commencement of this action and at the times hereinafter mentioned, a corporation duly chartered and organized under and by the laws of the State of Virginia, and a citizen thereof, with authority under its charter to purchase and lease railroads, both inside and outside the State of Virginia.

"3. That on or about the 10th day of July, 1894, the defendant purchased the Charlotte, Columbia and Augusta Railroad, at a foreclosure sale, under decree of foreclosue and sale rendered in a suit in the United States Circuit Court for the Fourth Circuit in the District of South Carolina, upon a mortgage made by said the Charlotte, Columbia and Augusta Railroad Company, of said railroad; that said Charlotte, Columbia and Augusta Railroad was a line of railway extending from the city of Charlotte, in the State of North Carolina, through the State of South Carolina to the city of Augusta, in the State of Georgia, and a connecting link in a through line of railway owned, controlled and operated by defendant, having *termini* in different States, and as such constituted part of the machinery whereby defendant carried commerce between the States; and said railroad is now owned, controlled and operated by defendant as one of the connecting links in the said through line of railway of this defendant company.

"4. That among the laws of the State of South Carolina, under and by virtue of which defendant purchased and is now operating the aforesaid railroad in the State of South Carolina, is an act of the General Assembly of said State entitled 'An act to declare the terms on which foreign corporations may carry on business and own property in the State of South Carolina,' approved December 20, 1893 (XXI.

Stat., 411), and defendant alleges that on the        day of July, 1894, it fully complied with the terms and conditions of said act, and has since said time so complied.

"5. That on the        day of January, 1897, this defendant did file in the office of the secretary of State of the State of South Carolina, a copy of its charter, authenticated in the manner directed by law for the authentication of the statutes of the State of Virginia, under whose laws it was chartered and organized, and did further, prior to the        day of July, 1899, and prior to the alleged injury to the plaintiff's intestate, cause a copy of said charter to be recorded in the office of the register of mesne conveyances in the counties of said State in which it was carrying on its business; that said acts were done in compliance with the act of the General Assemply of South Carolina, entitled 'An act to provide the manner in which railroad companies, incorporated under the laws of other States or countries, may become incorporated in this State,' approved March 19, 1896; but defendant alleges that by such acts it did not deprive itself of the right as a citizen of the State of Virginia to remove causes and actions brought against it by the citizens of South Carolina in the Courts of this State to the United States Circuit Courts sitting in said States, under the act of Congress in such case made and provided; nor did such acts done by it deprive such Federal Courts of the jurisdiction to hear and determine such causes when so removed." The answer also set up as a second defense that the plaintiff's intestate was a trespasser, and was guilty of contributory negligence.

After hearing argument on defendant's petition for removal on the ground of diverse citizenship, his Honor, the presiding Judge, granted the following order: "A petition and bond for the removal of this case to the Circuit Court of the United States for the District of South Carolina was duly filed in this Court by the defendant, and its counsel now presents said petition and bond, and asks the Court to accept said petition and bond, and proceed no further with this suit, except to pass an order to remove the record into the United

States Court.   I am of the opinion that by compliance with the act of the General Assembly of South Carolina, approved March 9, 1896, the defendant has become a citizen of this State, and hence there is no diverse citizenship to entitle the defendant to an order of removal.   The motion for such order must be refused, and it is so ordered."

The defendant immediately served notice of appeal and exceptions on the plaintiff.   The record contains the following statement of facts : "After the service of said notice of appeal, the case was called for trial.   The defendant objected to proceeding to trial, on the ground that the Court had no jurisdiction.   It further objected to proceeding with the trial of the case, upon the ground that the notice of appeal which had been served operated as a supersedeas, and that until such appeal should be heard, the Court could not proceed with the trial.   Both objections were overruled, and the presiding Judge ordered, against such objections of the defendant, the case to proceed to trial, and thereupon a jury was empanelled to try the cause.   The plaintiff introduced testimony tending to maintain and prove the allegations of his complaint.   The defendant introduced testimony tending to disprove the allegations of the complaint, and to maintain and prove the defenses set up in its answer."

The defendant appealed upon the following exceptions :

"To the order refusing to remove cause:

"1. Excepts, because the presiding Judge erred, as a matter of law, in holding that defendant, by complying with the act of March 9, 1896, of the State of South Carolina, in filing its charter in the secretary of State's office, became a corporation and a citizen of the State of South Carolina, and hence could not remove the said case to the Federal Court.

"2. Excepts, because the presiding Judge erred, as a matter of law, in not deciding that notwithstanding such compliance with the act, the defendant, for purposes of jurisdiction in the Federal Courts, still remained a citizen of the State of Virginia, and upon the face of the record was entitled to an order of removal.

"3. Because the presiding Judge erred, as a matter of law, in refusing to accept said petition and bond, and proceed no further in said suit.

"To the ruling compelling defendant to proceed to trial:

"4. Excepts, because the presiding Judge erred, as a matter of law, in ordering, against the protest of defendant, the said case to proceed to trial in said Court, and in proceeding to try said case, against the objection of the defendant to the jurisdiction of said Court.

"5. Excepts, because the presiding Judge erred, as a matter of law, in holding that the notice of appeal served upon plaintiff did not operate as a supersedeas to stay all further proceedings in said Court until said appeal could be heard by the Supreme Court, and in directing that the said case should proceed to trial, notwithstanding defendant's objection.

"To the judgment and ruling of the Court:     ·

"6. Excepts, because the presiding Judge erred, as a matter of law, in charging the jury the plaintiff's first request, which was as follows: '1. That the violation of a statute or a valid municipal ordinance regulating the speed of railroad trains is negligence, and whether such negligence under any given circumstances be gross, or reckless, or wilful, is a question for the jury;' whereas, he should have charged them that the violation of such statute or ordinance is only a circumstance from which the jury may infer negligence."

This case was heard in connection with the case of Calvert *v.* Southern Railway Co. by the Supreme Court *en banc,* and as the question of removal is involved in both cases, and was the sole question in the case of Calvert *v.* Southern Ry. Co., we have selected that as the case in which to set out, at length, the views of this Court upon that question. What was there said disposed of the questions raised by the exceptions in this case relating to the right to removal.

We proceed to a consideration of the exceptions to the rulings compelling the defendant to proceed to trial. In the first place, the facts upon which the defendant made the mo-

tion for an order removing the case, were not in controversy, and the objection urged by it, why the State Court should not proceed with the trial of the case, were in the nature of a demurrer to the jurisdiction of the State Court, and, therefore, falls within the provisions of sec. 356, the *proviso* of which is as follows: *"Provided,* An appeal from a judgment or decree overruling a demurrer shall stay the further hearing of the cause unless the presiding Judge shall be satisfied that the ends of justice will be subserved by proceeding with the trial, and shall order the trial of the cause to proceed to judgment." The presiding Judge was satisfied that the ends of justice would be subserved by proceeding with the trial and properly ordered the trial of the cause to proceed to judgment. In the second place, the Circuit Court had jurisdiction of the case at the time of trial, as the return had not been filed in the Supreme Court. In the case of *Pelzer Manufacturing Co*. v. *Cely,* 40 S. C., 432, the Court, by Mr. Chief Justice McIver, thus states the rule: "As we understand it, the Circuit Court having once acquired jurisdiction of a cause and the parties thereto, retains such jurisdiction until it is lost, and it is not lost until the jurisdiction of this Court attaches. Now, as it has always been held that the jurisdiction of this Court does not attach until the return required by rules 1 and 2 has been filed in this Court, for the obvious reason that until the return is filed, this Court has no record upon which it could take jurisdiction of any cause, except such as are specially provided for, either by the Constitution, the statutes or rules of Court, and as it is very clear that the present case does not fall within any of those classes, it follows necessarily that this Court never acquired jurisdiction of this cause until after the return was filed." It is true, there are expressions in some of the cases that are not in accord with this doctrine, arising from a misconception of the facts in the case of *Bank* v. *Stelling,* 32 S. C., 102, and from decisions rendered before sec. 356 of the Code was amended. In the last mentioned case, the Court says: "While this appeal was pending and

before the Court announced its judgment, the case came up before his Honor, Judge Wallace, who heard the case, notwithstanding the pending appeal, which was brought to his attention. * * * From the view which we have taken of these cases, we have reached the conclusion that the fifteenth exception must be sustained, which demands a reversal of the judgment below, on the ground that at the time the cases were heard below by his Honor, Judge Wallace, an appeal was then pending in this Court which in our judgment deprived the lower Court of jurisdiction."

Lastly, we will consider the exception to the judgment and rulings of the Court. We do not recall any case in which the exact question raised by the exception has been presented to this Court for adjudication. There are several cases in this State deciding that it is negligence *per se* for a railroad company to fail to comply with the provisions of sec. 1685 of the Rev. Stat., as to ringing the bell or sounding the whistle within a certain distance, when approaching a highway, &c. The ordinance hereinbefore mentioned was dependent for its validity on the act of the legislature granting a charter to the town, and, as the legality of the ordinance is not in controversy, it must be construed to have the same force and effect as an act of the legislature. There is, therefore, no reason why the violation of an ordinance should not constitute negligence *per se* as effectually as the violation of an act of the legislature. Again, negligence is in general a mixed question of law and fact. When, however, the facts are not in controversy, and there is but one inference to be drawn from them, they only present a question of law to be determined by the Court and not by the jury. In this case, it does not appear that the facts touching this question were in controversy, nor is there anything in the record showing that they were susceptible of more than one inference. There was, therefore, no error in charging plaintiff's first request. There is still another reason why the exception cannot be sustained. It is not only incumbent on the appellant to show that there was error,

but he must also show that he thereby suffered prejudice. There is nothing in the record upon which such fact can be based.

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE and CIRCUIT JUDGE TOWNSEND *concur.*