## CALVERT v. SOUTHERN RY. CO.

REMOVAL OF CAUSES—FOREIGN CORPORATION—DIVERSE CITIZENSHIP.— A RAILROAD corporation created in and by a foreign State, and complying with the provisions of 22 Stat., 114, and of art. IX., sec. 8, of Constitution of 1895, as to foreign corporations becoming domestic corporations, can remove to the Circuit Court of the United States for the District of South Carolina under U. S. Statute, on ground of diverse citizenship, a suit commenced in State Courts by a citizen of this State against it. *Court en banc.* MESSRS. JUSTICES POPE *and* GARY *and* CIRCUIT JUDGE TOWNSEND *dissent.*

Before GARY, J., Abbeville, October, 1899. Reversed.

Action by W. A. Calvert, administrator of D. C. Calvert, against Southern Ry. Co. From Circuit order refusing to sustain removal to Circuit Court of the United States, defendant appeals.

*Mr. T. P. Cothran,* for appellant, in argument before Supreme Court, cited: *On question of removal:* 53 S. C., 246; 161 U. S., 545; 176 U. S., 659; 170 U. S., 100, 552; Rev. Stat. U. S., secs. 639 *et seq.;* Con. U. S., art. III., sec. 3; 49 S. C., 539.

*Mr. B. L. Abney,* for appellant before *Court en banc* (oral argument).

*Mr. Wm. N. Graydon,* contra, both before Supreme Court and Court *en banc* (*argument misplaced*).

August 10, 1900. The opinion by the Supreme Court was delivered by

MR. JUSTICE JONES. This action was for $10,000 damages for alleged negligent killing of plaintiff's intestate by the defendant company on its line of railway, in Abbeville County, in this State. Before entering upon trial the defendant interposed objection to the jurisdiction of the Court on the ground of defendant's right to remove said cause to the Circuit Court of the United States, based upon the following agreed statement of facts:

"1. That the Southern Railway Company, on the 18th of June, 1894, became a corporation under the laws of the State of Virginia.

"2. That said Southern Railway Company has complied with the Constitution, art. IX., sec. 8, and with the acts of Assembly of said State, in reference to foreign corporations doing business in this State, by filing with the secretary of State a certified copy of its charter, on the     day of January, 1897, and by filing the same with the register of mesne conveyance of Abbeville County on April     1896.

"3. That on the     day of July, 1899, the defendant filed with the clerk of the Court of Common Pleas of Abbeville County its petition for removal of this cause to the Circuit Court of the United States for the District of South Carolina, and accompanied said petition with a properly executed bond as required by law. Said petition and bond were filed within the time required by the Statutes of South Carolina for answering the complaint herein.

"4. That thereafter, on the     day of July, 1899, the defendant served upon plaintiff's attorneys its answer in this case.

"5. That within the time required by law the defendant filed with the clerk of the United States Circuit Court for the District of South Carolina a certified copy of the record in said cause, and procured the said cause to be docketed in said last named Court. The plaintiff does not waive its objection that such filing and docketing cannot be made until the State

Court signs an order allowing removal of said cause to the United States Court.

"6. That notwithstanding said proceedings for removal, the plaintiff has procured said cause to be docketed upon calendar No. 1 of the Court of Common Pleas for Abbeville County."

The Circuit Court overruled the objection, on the authority of *Mathis* v. *R. R. Co.,* 53 S. C., 257, and from the order in the premises is this appeal. The question of the right of the defendant company to remove a similar cause on substantially the same state of facts was considered in the recent case of John Wilson, as administrator, *v.* Southern Railway Co., filed on the          day of          1900, wherein the case of Mathis *v.* R. R. Co., *supra,* was overruled, and the right of defendant to remove on the ground of diverse citizenship and non-residence was sustained. That decision controls this case. Upon the filing of the required petition and bond for removal, the State Court has no jurisdiction to proceed further. *Marshall* v. *Holmes,* 141 U. S., 595; *Pelzer Mfg. Co.* v. *Sun Fire Office,* 36 S. C., 213; *Dunham* v. *Carson,* 37 S. C., 279.

The judgment of the Circuit Court is reversed.


MR. JUSTICE POPE *dissents and reserves the right to file dissenting opinion hereafter.*


· The remittitur was held up on petition for rehearing and for argument before *Court en banc.* The petition was granted and argument ordered to be had before *Court en banc* on August          1901.

May 6, 1902. The opinion of the *Court en banc* was delivered by

MR. JUSTICE JONES. The question presented in this case is whether the defendant, Southern Railway Company, being sued in the State Court by a citizen of this State, was entitled to remove the cause to the United States Circuit Court upon

the ground of diverse citizenship.    It appears that a petition for removal, with a properly executed bond, was duly filed. The petition shows that the defendant company was incorporated under the laws of Virginia on the 18th day of June, 1894, and subsequently complied with the act approved March 9th, 1896, entitled "An act to provide the manner in which railroad companies incorporated under the laws of other States or countries may become incorporated in this State," by filing a certified copy of its charter in the office of the secretary of State, and causing a certified copy thereof to be recorded in the office of the register of mesne conveyances or clerk of the Court of Common Pleas in each county in which such corporation proposed to carry on business or acquire property.    The third section of said act provides, "That when a foreign corporation complies with the provisions and requirements of this act, it shall *ipso facto* become a domestic corporation, and shall enjoy the rights and be subject to the liabilities of such domestic corporation; it may sue and be sued in the Courts of this State, and shall be subject to the jurisdiction of this State as fully as if it were originally created under laws of the State of South Carolina."    22 Stat., 114.    The question, then, is whether a corporation originally created in one State and subsequently adopted in another State, becomes a "citizen" of the latter State for purposes of federal jurisdiction, so as to be entitled to remove the cause to the Federal Court, when the plaintiff is a citizen of the State adopting the foreign corporation. Strictly speaking, corporations are not citizens, but artificial persons or bodies.    The Federal Courts, however, take jurisdiction of corporations by looking beyond the artificial body to the individuals of which it is composed as the real parties in interest.    The rule at one time prevailed that federal jurisdiction existed when all the corporation or stockholders were citizens of a State or States different from that of the adverse party.    *Bank* v. *DeVeaux,* 5 Cranch, 61; *Bank* v. *Slocomb,* 14 Peters, 60.    But the practical difficulty in applying this rule, in view of the unknown and ever vary-

ing list of changing stockholders, or the fact that federal jurisdiction over the vast interests represented by corporations could be wholly defeated by having but a single stockholder in every State wherein the corporation did business, doubtless lead to the rule which now prevails.   Since the case of *Louisville etc. R. R.* v. *Letson,* 2 Howard, 497, it has been firmly established that there is an indisputable presumption that the corporators of a corporation are citizens of the State which originally created the corporation.   *St. Louis & S. F. Ry. Co.* v. *James,* 161 U. S., 545; *Louisville N. A. & C. Ry. Co.* v. *Louisville Trust Co.,* 174 U. S., 552.

 In the James case, *supra,* Etta James, a citizen of Missouri, brought an action for the negligent killing of her husband at Monett, in Missouri, where he resided, in the United States Circuit Court in Arkansas, against the St. Louis &c. R. R. Co., originally created a corporation in Missouri and domesticated in Arkansas, by compliance with the Arkansas statute, substantially as the act of 1896, *supra.*   The defendant waived its personal privilege of being sued in the district of which he was an inhabitant, but raised the objection that the Circuit Court in Arkansas had no jurisdiction on ground that the defendant was not a citizen of Arkansas, but was a citizen of Missouri, of which State the plaintiff was a resident and citizen.   The United States Supreme Court held, on the question proposed for determination, that the Missouri corporation by compliance with the Arkansas statute did not become an Arkansas corporation in such a sense as to make it a citizen of Arkansas, so as to subject it to a suit in the Federal Circuit Court by a citizen of the State of its origin.   The facts which may be said to distinguish the James case from the case at bar do not seem to be at all material; for the question was one of *citizenship,* and the vital principle announced is that a corporation originally created in one State does not for purposes of federal jurisdiction become a *citizen* of another State by compliance with a statute of the latter State, with provisions like our statute of 1896. In the case of *Louisville R. R. Co.* v. *Louisville Trust Co.,*

174 U. S., 552, a corporation created in Indiana brought an action in the Federal Court in Kentucky against several Kentucky corporations. There was a plea to the jurisdiction asserting that the plaintiff was a corporation and citizen of Kentucky, of which State the defendants were corporations. There was a contest as to whether the Indiana corporation had accepted the provisions of a Kentucky statute, which it was alleged constituted it a corporation of Kentucky. The Supreme Court, on the question of jurisdiction, said: "The acts done by the Louisville, New Albany and Chicago Railway Company under the statute of Kentucky, while affording ample evidence that it had accepted the grants thereby made, can hardly affect the question whether the terms of these statutes were sufficient to make the company a corporation of Kentucky. But a decision of the question, whether the plaintiff was or was not a corporation of Kentucky, does not appear to this Court to be required for the disposition of this case, either as to the jurisdiction or as to the merits. As to the jurisdiction, it being clear that the plaintiff was first created a corporation of the State of Indiana, even if it was afterwards created a corporation of the State of Kentucky also, it was, and remained for purposes of the jurisdiction of the Courts of the United States, a citizen of Indiana, the State by which it was originally created. It could neither have brought suit as a corporation of both States against a corporation or other citizen of either State, nor could it have sued or been sued as a corporation of Kentucky in any Court of the United States." It is true, that the Southern Railway Company became a corporation of South Carolina by compliance with the act of 1896, *Southern Railway Co.* y. *Tompkins,* 48 S. C., 49; but as shown above, this fact is not material on the question whether the Southern Railway Company thereby became a citizen of South Carolina for purposes of federal jurisdiction, when it appeared that said corporation was originally created in and thereby became a citizen of Virginia. Let us for a moment examine the act of 1896, *supra.* By its title it purports to provide

the manner in which railroad corporations, companies incorporated in other States, may become incorporated in this State.    By the third section, quoted already, it is provided that when the *foreign corporation* complies with the provisions and requirements of the act, *it* (the foreign corporation) shall *ipso facto* become a domestic corporation, &c. The act does not provide for the creation of a new and distinct corporation out of natural persons or other corporations, whose citizenship could be imputed to the new corporation, but it operates solely on the foreign corporation, as to which there is an indisputable presumption that its corporators are citizens of the State originally creating it.    So to speak, the only corporator in the South Carolina corporation is the foreign corporation or its corporators, conclusively presumed to be citizens of Virginia.    It would seem clear in such case that the indisputable presumption of citizenship which attaches to the foreign corporation for purposes of federal jurisdiction would follow it on its mere adoption as a domestic corporation in another State.    Keeping in mind that the mere fact that the Southern Railway Company became a South Carolina corporation, is not conclusive as to the question of citizenship, as shown in the Louisville Trust Company case, *supra,* and keeping in mind that the Federal Courts look beyond the mere corporate entity and impute to the corporation the citizenship of its corporators, it would seem inevitable that the indisputable presumption of citizenship attaching to a foreign corporation would not be overthrown by another contrary indisputable presumption, the foreign corporation by filing a certified copy of its charter with the secretary of State and the county recording officer, *ipso facto* became a domestic corporation.    Quite a different question was presented in *Memphis & C. R. R.* v. *Alabama,* 2 Sup. Ct. Rep., 432; for by the Alabama statute, which sought to incorporate the Memphis and Charleston Railroad Company, there being a railroad of the same name incorporated in Tennessee, it was provided, among other things, that books of subscription to the capital stock should be

10—64

opened in Alabama, so as to afford the citizens thereof an opportunity to take stock. This and other provisions of the act shows that the Alabama corporation, although of the same name as the Tennessee corporation, was to be a *new* corporation, composed of natural persons and organized under the laws of Alabama, and hence was not entitled to remove to the Federal Court a suit against it by the State of Alabama for the use of Jackson County therein. Says Mr. Justice Shiras, in the James case, *supra,* speaking for the Court, in language quoted with approval in the Louisville Trust Company case, *supra,* by Mr. Justice Gray, delivering the opinion therein: "In order to bring such an artificial body as a corporation within the spirit and letter of that Constitution, as construed by the decision of this Court, it would be necessary to create it out of natural persons, whose citizenship of the State creating it could be imputed to the corporation itself. But it is not pretended in the present case that natural persons resident in and citizens of Arkansas, were, by the legislation in question, created a corporation, and that, therefore, the citizenship of the individual corporators is imputable to the corporation."

The question being a federal question, the State Court is bound to follow the decisions thereon by the United States Supreme Court, the tribunal invested with power to finally determine such questions; and under our interpretation of the decisions of that Court, we can reach no other conclusion than that the Southern Railway Company is not a citizen of South Carolina, but is a citizen of Virginia for purposes of federal jurisdiction. This presents a case of diverse citizenship, which entitled the defendant company to remove the cause to the Federal Court. The State Circuit Court having denied this right and proceeded with the trial, committed reversible error, for it is well settled that when a sufficient case for removal is made in the State Court, the rightful jurisdiction of the State Court comes to an end, and no further proceedings can be properly had unless in some

form its jurisdiction is restored.    *R. R. Co.* v. *Koontz,* 104 U. S., 5; *Kern* v. *Huidekoper,* 103 U. S., 485.

Under this view, the judgment of the Circuit Court should be reversed, and it is so adjudged.

MR. CHIEF JUSTICE McIVER *and* CIRCUIT JUDGE ALD-RICH *concur.*

CIRCUIT JUDGE WATTS *concurs, for reasons stated by him in Wilson* v. *Southern Ry.*

MR. JUSTICE POPE *and* CIRCUIT JUDGE TOWNSEND *dissent.*

MR. JUSTICE GARY *dissenting.*    This is an action by W. A. Calvert, a citizen of South Carolina, as administrator of D. C. Calvert, deceased, who was at the time of his death a citizen of South Carolina, for $10,000 damages resulting from the alleged negligent killing of the deceased by the defendant, in Abbeville County, State of South Carolina, on the 7th day of March, 1899.    The complaint alleges that on the 7th of March, 1899, the defendant was, and is now, a corporation duly authorized under the laws of the State of South Carolina to conduct and operate a general railroad business in this State.    The defendant, in its answer, denies that it is a corporation under the laws of South Carolina. The cause was called for trial on the 3d of October, 1899, and upon the hearing the following facts were admitted:

"1.  That Southern Railway Company, on the 18th day of June, 1894, became a corporation under the laws of the State of Virginia.

"2.  That said Southern Railway Company has complied with the Constitution, art. IX., sec. 8, and with the acts of assembly of said State in reference to foreign corporations doing business in this State, by filing with the secretary of State a certified copy of its charter on the          day of January, 1897, and by filing the same with the register of mesne conveyances of Abbeville County, on April          1896.

"3. That on the   day of July, 1899, the defendant filed with the clerk of the Court of Common Pleas of Abbeville County its petition for removal of this cause to the Circuit Court of the United States for the District of South Carolina, and accompanied said petition with a properly executed bond as required by law. Said petition and bond were filed within the time required by the statutes of South Carolina for answering the complaint herein.

"4. That thereafter, on the   day of July, 1899, the defendant served upon plaintiff's attorneys its answer in this case.

"5. That within the time required by law the defendant filed with the clerk of the United States Circuit Court for the District of South Carolina a certified copy of the record in said cause, and procured the said cause to be docketed in said last named Court. The plaintiff does not waive its objection that such filing and docketing cannot be made until the State Court signs an order allowing removal of said cause to the United States Court. .

"6. That notwithstanding said proceedings for removal, the plaintiff has procured said cause to be docketed upon calendar 1 of the Court of Common Pleas for Abbeville County."

The defendant objected to the jurisdiction of the Court on the grounds: "That it is a non-resident of the State in which said suit is brought, to wit: the State of South Carolina, but is a corporation under the laws of the State of Virginia; that prior to the time when the defendant was required by the laws of South Carolina to answer or plead to the complaint, it filed with the clerk of the Court of Common Pleas for Abbeville County, South Carolina, its petition for the removal of said cause to the Circuit Court of the United States for the District of South Carolina. After argument, his Honor, the presiding Judge, overruled the objection, by a formal order, whereupon the defendant appealed upon exceptions assigning error on the part of the presiding Judge

in refusing to grant an order removing the case to the Circuit Court of the United States."

We approach the solution of the question presented by the appeal with feelings expressed by Mr. Justice Douglas, in *Debnam* v. *Southern Bell Telephone Co.*, 36 S. E. R., 269, in which he says: "No Court has a right to abandon its own lawful jurisdiction when properly invoked, any more than it has to infringe upon the exclusive or paramount jurisdiction of another tribunal. The State Court clearly has original jurisdiction of the action at bar, subject to be defeated by the defendant's right of removal, if such right exists. Such existing right of removal may be waived by the defendant, or, rather, it is lost if not claimed in apt time and in strict accordance with the terms of the statute. The petition, taken in connection with the complaint, must show a *prima facie* right of removal, in which event it is the duty of the State Court to grant the order of removal and stay all further proceedings. If the defendant does not show a *prima facie* right, it is the duty of the State Court to retain the cause for such further proceedings as may be proper. It is not a question of discretion for either tribunal, but one of absolute right, involving the vital fact of jurisdiction; and the relinquishment of jurisdiction by one or its assumption by the other, would not confer the right of removal if it did not already exist. It would seem that for the purposes of the motion, disputed facts are properly determinable by the Federal Courts; but the principle is fully recognized by the Supreme Court of the United States that 'the State Court is not required to let go its jurisdiction until a case is made which, upon its face, shows that the petitioner can remove the cause as a matter of right.' Removal cases, 100 U. S., 457, 474, 25 L. ed., 593; *Armory* v. *Armory,* 95 U. S., 186, 24 L. ed., 428; *Yulee* v. *Vose,* 99 U. S., 539, 545, 25 L. ed., 355; *Stone* v. *South Carolina,* 117 U. S., 430, 432, 6 Sup. Ct., 799, 29 L. ed., 962; *Howard* v. *Railway Co.,* 122 N. C., 944, 953, 954, 29 S. E., 778; *Bradley* v. *Railroad Co.,* 119 N. C., 744, and Appendix, 918, 26 S. E., 169."

The two recent cases bearing upon the question under consideration are *St. Louis & S. F. Ry. Co.* v. *James,* 161 U. S., 545, and *Louisville, N. A. & C. Ry. Co.* v. *Louisville Trust Company,* 174 U. S., 552.    In the first mentioned case, Etta James, a citizen of Missouri, brought suit against the St. Louis and S. F. Ry. Co. in the United States Circuit Court of Arkansas for the negligent killing of her husband, while employed as a fireman on one of the defendant's engines, at Monett, a station in Missouri, where her husband resided. The St. Louis and S. F. Ry. Co. was organized and incorporated under the laws of the State of Missouri.    Thereafter an act was passed by the General Assembly of the State of Arkansas which provides : "that before any railroad corporation of any other State or Territory shall be permitted to avail itself of the benefits of this act, or any part thereof, such corporation shall file with the secretary of State of this State a certified copy of its articles of incorporation, if incorporated under a general law of such State or Territory, or a certified copy of the statute laws of such State or Territory incorporating such company, where the charter of such railroad corporation company was granted by special statute of such State ; and upon the filing of such articles of incorporation or such charter, with a map and profile of the proposed line and paying the fees prescribed by law for railroad charters, such railroad companies shall, to all intents and purposes, become a railroad corporation of this State, subject to all the laws of the State now in force or hereafter enacted, the same as if formally incorporated in this State, anything in its articles of incorporation or charter to the contrary notwithstanding ; and such acts on the part of such corporation shall be conclusive evidence of the intent of such corporation to create and become a domestic corporation."    In pursuance of said act, the St. Louis and S. F. Ry. Co. filed with the secretary of State of the State of Arkansas a duly certified copy of its articles of incorporation under the laws of Missouri, as required by said act, and has never been

otherwise incorporated under the laws of the State of Arkansas.

The United States Circuit Court of Appeals desired the instruction of the United States Supreme Court upon the following question: "(2) In view of the provisions of the act of the General Assembly of Arkansas, approved March 13, 1889, did the St. Louis and San Francisco Railway Company, by filing a certified copy of its articles of incorporation under the laws of Missouri with the secretary of the State of Arkansas and continuing to operate its railroad through that State, become a citizen of the State of Arkansas, so as to give the Circuit Court of the United States for the Western District of Arkansas jurisdiction of this action, in which the defendant in error was and is a citizen of the State of Missouri?" After quoting from certain cases, the Court says: "To fully reconcile all the expressions used in these cases would be no easy task, but we think the following propositions may be fairly deduced from them: There is an indisputable legal presumption, that a State corporation, when sued or suing in a Circuit Court of the United States, is composed of citizens of the State which created it, and hence such a corporation is itself deemed to come within that provision of the Constitution of the United States which confers jurisdiction upon the Federal Courts in 'controversies between citizens of different States.' It is competent for a railroad corporation organized under the laws of one State, when authorized so to do by the consent of the State which created it, to accept authority from another State to extend its railroad into such State, and to receive a grant of powers to own and control by lease or purchase, railroads therein, and to subject itself to such rules and regulations as may be prescribed by the second State. Such legislation on the part of two or more States is not, in the absence of inhibitory legislation by Congress, regarded as within the constitutional prohibiton of agreements or compacts between States. Such corporations may be treated by each of the States whose legislative grants they accept as domestic corporations. The

presumption that a corporation is composed of citizens of the State which created it, accompanies such corporation when it does business in another State, and it may sue or be sued in the Federal Courts in such other State as a citizen of the State of its original creation. We are now asked to extend the doctrine of indisputable citizenship, so that, if a corporation of one State, indisputably taken, for the purpose of federal jurisdiction, to be composed of citizens of such State, is authorized by the law of another State to do business therein, and to be endowed, for local purposes, with all the powers and privileges of a domestic corporation, such adopted corporation shall be deemed to be composed of citizens of the second State, in such a sense as to confer jurisdiction on the Federal Courts at the suit of a citizen of the State of its original creation. We are unwilling to sanction such an extension of a doctrine which, as heretofore established, went to the very verge of judicial power. * * * It is true, that by the subsequent act of 1889, by the *proviso* to the second section, it was provided that every railroad corporation of any other State, which had theretofore leased or purchased any railroad in Arkansas, should, within sixty days from the passage of the act, file a certified copy of its articles of incorporation or charter with the secretary of State, and shall thereupon become a corporation of Arkansas, anything in its articles of incorporation or charter to the contrary notwithstanding; and it appears that the defendant company did accordingly file a copy of its articles of incorporation with the secretary of State. But whatever may be the effect of such legislation, in the way of subjecting foreign railroad companies to control and regulation by the local laws of Arkansas, we cannot concede that it availed to create an Arkansas corporation out of a foreign corporation, in such a sense as to make it a citizen of Arkansas within the meaning of the Federal Constitution, so as to subject it as such to a suit by a citizen of the State of its origin. In order to bring such an artificial body as a corporation within the spirt and letter of that Constitution, as construed by the decisions of this Court, it

would be necessary to create it out of natural persons whose citizenship of the State creating it could be imputed to the corporation itself."

The facts in the James case are quite different from those in the case under consideration, and raise a different question. The Rev. Stat. of the United States (Supp. 1874-1891, pages 611-612,) provides: "that the Circuit Courts of the United States shall have original cognizance, concurrent with the Courts of the several States, of all suits of a civil nature * * * in which there shall be a controversy between citizens of different States. * * * And no civil suit shall be brought before either of the said Courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suits shall be brought only in the district of the residence of either the plaintiff or the defendant." In the James case, the question was whether the United States Circuit Court of Arkansas had jurisdiction in the first instance; while in this case, the question is whether it was one proper for removal to the United States Circuit Court from the State Court, that unquestionably had concurrent jurisdiction in the first instance, subject to the right of removal in a proper case. Again, in the James case, the plaintiff did not have the right to proceed under that provision of the statute that suit might be brought in either of said Courts in the district of which the plaintiff was an inhabitant (as she was not an inhabitant of Arkansas) ; whereas the plaintiff herein had a right to sue the *Virginia* corporation either in the State Court or in the United States Circuit Court of South Carolina. The plaintiff in the James case would have had no greater right to bring suit against the *Missouri* corporation in the State Court of Arkansas than she had to commence her action in the United States Circuit Court of the last mentioned State.

In the case of *Louisville, N. A. & C. Ry. Co.* v. *Louisville Trust Co.,* 174 U. S., 552, these facts are stated : "This was a

bill in equity, filed April 9, 1890, in the Circuit Court of the United States for the District of Kentucky, by the Louisville, New Albany and Chicago Railway Company, described as a 'corporation duly organized and existing under the laws of the State of Indiana,' against the Ohio Valley Improvement and Contract Co., the Richmond, Nicholasville, Irvine and Beattyville Railway Company, and the Louisville Trust Company, all corporations of the State of Kentucky, and other citizens of Kentucky, of New York and of Illinois, for the cancellation of a contract between the New Albany Company and the Construction Company, of a guaranty indorsed by the New Albany Company in accordance with that contract, upon bonds issued by the Beattyville company and held by the other defendants, and for an injunction against suits thereon." A plea to the jurisdiction, asserting that the plaintiff was a corporation and a citizen of Kentucky, was overruled. In disposing of the appeal to the United States Supreme Court, Mr. Justice Gray says: "The plaintiff, the Louisville, New Albany and Chiacgo Railway Company, undoubtedly became a corporation of the State of Indiana in 1873 by its incorporation, according to the general statute of 1865 of that State. Whether it afterwards became a corporation of the State of Kentucky, also was strongly contested at the bar, and depends upon the legal effect of the statute of Kentucky of 1880. * * * This Court has often recognized that a corporation of one State may be made a corporation of another State by the legislature of that State, in regard to property and acts within its territorial jurisdiction. *Railroad Co.* v. *Wheeler,* 1 Black, 286, 297; *Railroad Co.* v. *Harris,* 12 Wall, 65, 82; *Railway Co.* v. *Whitton,* 13 Wall, 270, 283; *Railroad Co.* v. *Vance,* 96 U. S., 450, 457; *Memphis & C. R. Co.* v. *Alabama,* 107 U. S., 581, 2 Sup. Ct., 432; *Clark* v. *Barnard,* 108 U. S., 436, 451, 452, 2 Sup. Ct., 878; *Stone* v. *Trust Co.,* 116 U. S., 307, 334, 6 Sup. Ct., 334, 388, 1191; *Graham* v. *Railroad Co.,* 118 U. S., 161, 169, 6 Sup. Ct., 1009; *Martin's Admr.* v. *Railroad Co.,* 151 U. S., 673, 677, 14 Sup. Ct., 533. But this Court has re-

peatedly said that, in order to make a corporation already in existence under the laws of one State, a corporation of another State, 'the language used must imply creation or adoption in such form as to confer the powers usually exercised over corporations by the State or by the legislature, and such allegiance as a State corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this.' *Pennsylvania R. Co.* v. *St. Louis, A. & T. H. R. Co.,* 118 U. S., 290, 296, 6 Sup. Ct., 1094; *Goodlett* v. *Railroad Co.,* 122 U. S., 391, 405, 408, 7 Sup. Ct. 1254; *Railway Co.* v. *James,* 161 U. S., 545, 561, 16 Sup. Ct., 621. The acts done by the Louisville, New Albany and Chicago Railway Company, under the statutes of Kentucky, while affording ample evidence that it had accepted the grants thereby made, can hardly affect the question whether the terms of those statutes were sufficient to make the company a corporation of Kentucky. But a decision of the question whether the plaintiff was or was not a corporation of Kentucky does not appear to this Court to be required for the disposition of this case either as to the jurisdiction or as to the merits. As to the jurisdiction, it being clear that the plaintiff was first created a corporation of the State of Indiana, even if it was afterwards created a corporation of the State of Kentucky also, it was, and remained, for the purposes of the jurisdiction of the Courts of the United States, a citizen of Indiana, the State by which it was originally created. It could neither have brought suit as a corporation of both States against a corporation or other citizen of either State, nor could it have sued or been sued as a corporation of Kentucky in any Court of the United States. *Railroad Co.* v. *Wheeler,* 1 Black, 286; *Railway Co.* v. *James,* 161 U. S., 545, 16 Sup. Ct., 621; *Railroad Co.* v. *Steele,* 167 U. S., 659, 663, 17 Sup. Ct., 925; *Steamship Co.* v. *Kane,* 170 U. S., 100, 106, 18 Sup. Ct., 526."

The language of Mr. Justice Gray, when he says: "But a decision of the question whether the plaintiff was or was not a corporation of Kentucky, does not appear to this Court to

be required for the disposition of this case, either as to the
jurisdiction or as to the merits," is made clear in the light of
the authorities.    In Black's Dillion on Removal of Causes,
sec. 101, it is said : "If a corporation already enjoying cor-
porate existence under the laws of one State, receives also a
charter from another State, it becomes, for purposes of juris-
diction, a citizen of each of those States.    When it appears
as plaintiff or defendant in the Courts of either of these
States, or in the Federal Courts sitting therein, in its capacity
as a corporation of that State, it is regarded as a citizen of
that State alone, and it cannot either invoke or deny the
federal jurisdiction on the grounds of its being a citizen of
the other State.    For while a corporation may be a citizen
of two or more States, according to the forum in which it
appears, or the origin of the cause of action, yet it cannot be
at the same time and for the purposes of jurisdiction in one
and the same suit, a citizen of two or more States.    'It has
no legal existence in either State except by the law of the
State; and neither State could confer on it a corporate exist-
ence in the other, nor add to or diminish the powers to be
there exercised.    It may, indeed, be composed of and
represent, under the corporate name, the same natural per-
sons.    But the legal entity or person which exists by force
of law, can have no existence, beyond the limits of the State
or sovereignty which brings it into life and endues it with
its faculties and powers.'    At this day it must be regarded
as settled beyond doubt or controversy, that two States of the
Union cannot, by their joint action, create a corporation
which will be regarded as a single corporate entity, and for
jurisdictional purposes, a citizen of each State which joined
in creating it.    One State may create a corporation of a
given name, and the legislature of an adjoining State may
declare that the same legal entity shall be or become a cor-
poration of that State as well, and shall be entitled to exercise
within its borders, by the same board of directors and
officers, all of its corporate functions.    Nevertheless, the
result of such legislation is not to create a single corporation,

but two corporations of the same name, having a different paternity. It follows that when a corporation is chartered by two States, it is, as to all its doings in each of those States, and to all claims and liabilities accruing against it there, a citizen of that State; and if it is sued in the Courts of that State by a citizen thereof, it cannot remove the cause to the Federal Court on the ground of its citizenship in the other State." The text is amply sustained by the authorities cited in the foot-notes to this section, as well as by those discussed in the James case and in the case of *Debnam* v. *Southern Bell Telephone Co.,* 36 S. E. R., 269.

In the case of *Louisville, N. A. & C. Ry. Co.* v. *Louisville Trust Co.,* 174 U. S., 552, the Court, we think, decided correctly that the Indiana corporation had the right to bring an action in the United States Circuit Court of Kentucky against a citizen of Kentucky, even though there was a corporation created under the laws of Kentucky with the same name, same corporators and for the same purposes as the Indiana corporation; thus recognizing, as we have hereinbefore stated, that the two corporations are separate entities. It must be remembered that the Southern Railway Co. is not sued as a corporation of Virginia, but the allegations of the complaint are that the defendant is a corporation duly authorized under the laws of the State of South Carolina to operate a general railroad business in this State—an entirely different entity from the Virginia corporation. If, as it is alleged in the complaint, the defendant is a corporation of the State of South Carolina, then there is an indisputable legal presumption that it is composed of citizens of the State which created it, and, therefore, it cannot be shown that it is composed of a citizen or citizens of the State of Virginia.

In commenting on the following case, the Court in St. Louis & S. F. Ry. Co. *v.* James, says: "*Marshall* v. *Railroad Co.,* 16 How., 314, was a case tried in the Circuit Court of the United States for the District of Maryland, wherein the plaintiff alleged that he was a citizen of the State of Virginia, and that the Baltimore and Ohio Railroad Company,

the defendant, was a body corporate by an act of the General Assembly of Maryland; and it was suggested, when the case came into this Court, that such an averment was insufficient to show jurisdiction in the Courts of the United States over the suits, and it was denied that the decision in *Railroad Co.* v. *Letson,* 2 How., 497, sanctioned it; or, if some of the doctrines there advanced seemed to do so, it was said that they were extra judicial and, therefore, not authoritative. Several Judges dissented; but the Court, speaking through Mr. Justice Grier, held that, 'if the declaration set forth facts from which the citizenship of the parties may be presumed or legally inferred, it is sufficient. The presumption arising from the habitat of a corporation in the place of its creation being conclusive as to the residence or citizenship of those who use the corporate name and exercise the faculties conferred by it; the allegation that "the defendants are a body corporate, by the act of the General Assembly of Maryland," it is a sufficient averment that the real defendants are citizens of that State.' "

As the plaintiff and the corporation against which he has brought his action are citizens of the same State, there is no question of diverse citizenship, and no federal question is involved.

Sec. 8, art. IX., of the Constitution is as follows : "Sec. 8. The General Assembly shall not grant to any foreign corporation or association a license to build, operate or lease any railroad in this State; but in all cases where a railroad is to be built or operated, or is now being operated, in this State, and the same shall be partly in this State and partly in another State or in other States, the owners or projectors thereof shall first become incorporated under the laws of this State; nor shall any foreign corporation or association lease or operate any railroad in this State, or purchase the same or any interest therein. ' Consolidation of any railroad lines and corporations in this State with others shall be allowed only where the consolidated company shall become a domestic corporation of this State. No general or special law shall

ever be passed for the benefit of any foreign corporation operating a railroad under an existing license of this State or under any existing lease, and no grant of any right or privilege and no exemption from any burden shall be made to any such foreign corporation except upon the condition that the owners or stockholders thereof shall first organize a corporation in this State under the laws thereof, and shall thereafter operate and manage the same and the business thereof under said domestic charter." Under this section a foreign corporation is expressly and emphatically prohibited from operating a railroad in this State. But the Constitution provides that a foreign corporation, *after it has first been created a domestic corporation, under the laws of this State,* shall have the right to operate a railroad in this State. The framers of the Constitution, as if foreseeing the complications that might arise unless they clearly expressed how a foreign corporation was to be created a domestic corporation, and as if to prevent a foreign corporation from contending at one time that it was a domestic corporation and at another time that it was not, wisely provided the manner in which it could become a domestic corporation. In order that a foreign corporation might become a domestic corporation and exercise the rights and privileges hereinbefore mentioned, it was necessary that the *"owners* or *stockholders* thereof should first organize a corporation in this State, under the laws thereof, and should thereafter operate and manage the same and the business thereof under said domestic charter" (italics ours). The intention was to meet the requirements of the laws of the United States, conferring upon the plaintiff the right to have the case tried in the State Court. In the agreed statement of facts it was admitted that Southern Railway Company, on the 18th of June, 1894, became a corporation under the laws of the State of Virginia; that said Southern Railway Company has complied with the *Constitution, art. IX., sec. 8, and with the acts of Assembly of said State,* in reference to foreign corporations doing business in this State, by filing

with the secretary of State a certified copy of its charter. If the Southern Railway Company has complied with the requirements of the Constitution, then it is in every respect a domestic corporation, and was not entitled to the removal. In the case of *State ex rel. Southern Ry. Co.* v. *Tompkins,* 48 S. C., 49, the Court construed the "act to provide the manner in which railroad corporations incorporated under the laws of other States or countries may become incorporated in this State" (22 Stat., 114), and held that "under the third section of said act, a foreign corporation complying with the provisions of said act, *ipso facto* becomes a domestic corporation, enjoying the rights and subject to the liabilities of domestic corporations, 'as fully as if it were originally created under the laws of this State.'" If this is a correct statement of the law, it necessarily follows that the case herein was not removable, and if it is not a correct statement of the law, the case of State *ex rel.* Southern Ry. Co. *v.* Tompkins should be overruled. *The right of Southern Ry. Co. to the removal is not to be determined by the act of incorporation alone, but likewise by the provisions of the Constitution, which are to be construed in connection with the act.* When so construed, it will be seen that the defendant is in every respect a domestic corporation.

In this connection the language of the Court in *Debnam* v. *Southern Telephone Co.,* 36 S. E. R., 269, is appropriate, to wit: "Having thus decided that the act in question does not license, or pretend to license, but in legal intention and effect creates a domestic corporation, we come to the final question, whether a corporation so domesticated can remove an action into the Federal Courts solely by virtue of its prior incorporation by some other State. In the case at bar, the defendant voluntarily took advantage of the act and became a domestic corporation, certainly as far as that act could make it so. It held itself out to the people of North Carolina as a domestic corporation, in order to obtain their business and at the same time evade the penalties attached to the transaction of any business by a foreign corporation, after all comity

had been withdrawn by legislative authority. The plaintiff had sued the defendant as a domestic corporation of this State, and in that capacity only, and states a cause of action that presents no element whatsoever of a federal question. He simply seeks to recover damages for personal injuries inflicted upon him by the defendant's servants, who dropped an iron bar upon his head while he was walking the public streets of an incorporated city. Admitting that the defendant exists in a dual capacity as a corporation under the laws of New York as well as of North Carolina, the plaintiff elected to sue it in the latter capacity. In fact, we do not see how he could well have sued it in any other capacity. Forbidden by law to do any business as a foreign corporation, and holding itself out as a domestic corporation, was not the plaintiff forced to presume that he was injured by the defendant in the transaction of its business as a domestic corporation? Is it not a legal presumption that the defendant was acting in the capacity in which alone it could lawfully transact any business?"

We do not see how any other conclusion can be reached than that this case is not one for removal, unless the United States Supreme Court has repudiated the doctrine enunciated in sec. 101 of Black's Dillon on Removal of Causes, which is affirmed in cases cited with approval by that Court in the cases of St. Louis & S. F. Ry. Co. *v.* James, and Louisville N. A. & C. Ry. Co. *v.* Louisville Trust Co., hereinbefore mentioned. The question, whether the defendant is a corporation of South Carolina, as alleged in the complaint, is to be determined by the State Court, and has already been decided in the affirmative at the instance of the Southern Ry. Co. But even if it should decide that the defendant is not a corporation created under the laws of South Carolina, it would not order the case removed to the U. S. Circuit Court, but dismiss the action by reason of the failure of the plaintiff to sustain the allegation of the complaint that the defendant is a corporation of this State.

11—64

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE *concurs.*

As defendant admits complying with Constitution and act of legislature in agreed statement, I concur. D. A. TOWNSEND, Circuit Judge.